Adrian D. DUVALL, Appellant,

v.

UNITED STATES, Appellee.

No. 95–CF–739.

District of Columbia Court of Appeals.

Argued April 16, 1996.

Decided May 16, 1996.

Jennifer C. Devine, Law Student, Washington, DC, with whom David A. Reiser was on the brief, for appellant.

Andrew J. Kline, Assistant United States Attorney, Washington, DC, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Roy W. McLeese, III, and Laura A. Cordero, Assistant United States Attorneys, were on the brief, for appellee.

Before FERREN, SCHWELB, and FARRELL, Associate Judges.

SCHWELB, Associate Judge:

Adrian D. Duvall was convicted by an eleven-member jury of possession of cocaine with intent to distribute it (PWID), in violation of D.C.Code § 33–541(a)(1) (1989). On appeal, he contends that the trial judge erred in accepting a verdict from eleven jurors. First, Duvall claims that the conduct underlying the charge against him occurred prior to the effective date of the Jury Trial Amendment Act of 1994 (JTAA), D.C. Law 10–232, D.C.Code § 16–705(c) (1995), which authorizes eleven-juror verdicts under certain extraordinary circumstances, and that the JTAA is therefore inapplicable to his case. Second, he asserts that his conviction predated the Superior Court's conforming amendment of the applicable court rule, Super. Ct.Crim. R. 23(b), and that the JTAA could not lawfully be invoked prior to the effective date of that amendment. We affirm.

## I.

On June 18, 1994, Duvall was arrested and charged with PWID after officers allegedly saw him drop to the ground a bag containing eighteen packages of crack cocaine. His trial began on March 22, 1995. On the following day, both parties rested and delivered their closing arguments. The judge then released the alternates and charged the jury. The jurors deliberated for almost three hours, but they had not reached a verdict when the trial was recessed at the close of the day.

On the morning of March 24, 1995, the judge advised the parties that the wife of one of the deliberating jurors had died the previous night. The bereaved juror had reported for service, but, without objection by either counsel, the judge excused him.

The judge then inquired of counsel if there was any objection to her permitting the remaining eleven jurors to resume their deliberations. Initially, both parties objected, and Duvall's attorney moved for a mistrial. The judge recessed the trial in order to determine the status of the JTAA. Following the recess, the judge advised counsel that the JTAA had become effective on March 21, 1995, the day before the trial began. She ruled that the death of the juror's wife constituted "extraordinary circumstances" within the meaning of the JTAA[1] and that the remaining jurors were therefore authorized to return a verdict. The judge rejected defense counsel's contention that the JTAA could not be applied where the underlying

---

1. Prior to the effective date of the JTAA, D.C.Code § 16–705(c) provided that the "jury shall consist of twelve persons, unless the parties, with the approval of the court and in the manner provided by rules of the court, agree to a number less than twelve." The Act added the following sentence: "Even absent such agreement, if, due to extraordinary circumstances, the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion of the court, a valid verdict may be returned by the remaining eleven jurors."

conduct occurred before its effective date, and she declined to order a mistrial.

The eleven remaining members of the jury resumed their deliberations, and they subsequently returned a verdict of guilty. Duvall was sentenced to imprisonment. This appeal followed.

## II.

■ Duvall first asserts that the trial judge erred by "retroactively" applying the JTAA. We do not agree.

■ Duvall concedes that application of the JTAA to his case does not run afoul of the constitutional proscription against *ex post facto* laws. His concession is a provident one, for the JTAA did not criminalize conduct which was lawful prior to its enactment, nor did it otherwise defeat any legitimate expectation which Duvall might have had. *See, e.g., United States v. Stratton,* 779 F.2d 820, 833–35 (2d Cir.1985), *cert. denied,* 476 U.S. 1162, 106 S.Ct. 2285, 90 L.Ed.2d 726 (1986). Rather, the JTAA affected only the procedures under which Duvall would be tried, and its consequences for affected defendants were comparatively minor and were not likely to bring any serious disadvantage to Duvall. *Id.* at 834.

■ Generally, laws which provide for changes in procedure may properly be applied to conduct which predated their enactment. As we explained in *Edwards v. Lateef,* 558 A.2d 1144, 1146–47 (D.C.1989),

> statutes that ... relate to the modes of procedure ... do not contravene the general proscription against the retrospective operation of legislation. *See generally Federal Broadcasting Sys. v. Federal Communications Comm'n,* 99 U.S.App. D.C. 320, 323, 239 F.2d 941, 944 (1956) ("If the amendment is either procedural or remedial in character the settled rule permits its retroactive application"); 73 Am. Jur.2d *Statutes* § 354 (1974) (although contrary authority exists, generally "statutes relating to remedies or modes of pro-

cedure which do not create new or take away vested rights, but only operate in furtherance of the remedy or confirmation of such rights, do not normally come within the legal conception of a retrospective law, or the general rule against the retrospective operation of statutes"); 82 C.J.S. *Statutes* § 421 (1953) ("As a general rule statutes relating to remedies and procedure are given retrospective construction").

The Supreme Court has recognized that the retroactive application of procedural statutes is proscribed if it impairs the defendant's "substantial rights." *See, e.g. Collins v. Youngblood,* 497 U.S. 37, 45–46, 110 S.Ct. 2715, 2720–21, 111 L.Ed.2d 30 (1990). Any claimed right to a twelve-member jury rather than one composed of eleven members, however, cannot fairly be characterized as "substantial." *Stratton, supra,* 779 F.2d at 834–35. In *Stratton,* the court, after carefully considering the applicable precedents, explicitly held that an amendment of Fed. R.Crim.P. 23(b) which, like the JTAA, authorized an eleven-member jury to return a valid verdict in circumstances such as those presented here, applied to a case which was tried after the amendment even though the underlying conduct occurred prior to the amendment's effective date. *Id.*[2] The court relied heavily on *Williams v. Florida,* 399 U.S. 78, 103, 90 S.Ct. 1893, 1907, 26 L.Ed.2d 446 (1970), in which the Supreme Court held that a criminal defendant has no right under the Sixth Amendment or the Fourteenth Amendment to a jury of twelve.

In *Williams,* the Court, after describing the purposes which a jury trial was designed to serve, discerned "little reason to think that these goals are in any meaningful sense less likely to be achieved when the jury numbers six, than when it numbers [twelve]—particularly if the requirement of unanimity is retained." *Id.* at 100, 90 S.Ct. at 1906. Further, according to the Court, "the fact that the jury at common law was composed of precisely [twelve] is a historical accident, unnecessary to effect the purposes of the jury

---

**2.** Rule 23(b) of the Superior Court's Criminal Rules was based on Fed.R.Crim.P. 23(b), and the two rules are identical in all relevant respects, except that Super. Ct.Crim. R. 23(b) makes

plain that the judge may not excuse the twelfth juror without finding "extraordinary circumstances."

system and wholly without significance except to mystics." *Id.* at 102, 90 S.Ct. at 1907 (citations and internal quotation marks omitted).

In *State v. Maresca,* 173 Conn. 450, 377 A.2d 1330 (1977), one of the decisions on which the court in *Stratton* relied, the defendant claimed that he could not lawfully be tried by a jury of six where the statute authorizing trials of non-capital cases by fewer than twelve jurors had been enacted six months after the commission of the offenses with which he was charged. The Supreme Court of Connecticut disagreed. After discussing the relevant Supreme Court precedents, beginning with *Thompson v. Utah,* 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1898), *overruled by Collins v. Youngblood,* 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990), and ending with *Williams v. Florida, supra,* the court stated:

> Since the *Williams* decision, a jury of twelve is no longer considered a constitutional right, and, as a matter of law, it is not deemed to offer any advantage of the defendant. Nor can it be any longer considered substantial. Thus the statute which diminished the jury's size from twelve to six did not take away a substantial right, but operated "only in a limited and unsubstantial manner to ... [the defendant's] disadvantage." *Beazell v. Ohio,* [269 U.S. 167, 170, 46 S.Ct. 68, 69, 70 L.Ed. 216 (1925) ]. It is noteworthy that the

Arizona Court of Appeals, when faced with this same question, reached this same conclusion. *State v. McIntosh,* 23 Ariz.App. 246, 532 P.2d 188 (1975).

377 A.2d at 1333; *accord, Iseton v. State,* 472 N.E.2d 643, 650–53 (Ind.App.1984).[3]

The Supreme Court's decision in *Williams* has thus established that the right to a twelve-member jury (as distinguished from one with only six members) is not a substantial one for constitutional purposes. The courts have held, in light of *Williams,* that a defendant may properly be tried by a jury of six (*Maresca* and *Iseton* ), or eight (*McIntosh* ), and that a verdict may lawfully be returned by a jury of eleven (*Stratton* ), even where, as in each of those cases, the law had required trial by a jury of twelve at the time the offenses were allegedly committed. We find those decisions persuasive, and we therefore discern no error in the judge's ruling that the JTAA should be applied to Duvall's trial.[4]

Duvall's reliance on *Alpizar v. United States,* 595 A.2d 991 (D.C.1991) is misplaced. In *Alpizar,* the defendant sought to invalidate his plea of guilty on the basis of procedural changes in Super. Ct.Crim. R. 11 which became effective *after his plea was taken.* In the present case, on the other hand, the JTAA became effective before the trial began, and the trial was properly conducted in conformity with the provisions of

---

**3.** In *McSears v. State,* 247 Ga. 48, 273 S.E.2d 847 (1981), the Supreme Court of Georgia held, with two justices dissenting, that a statute which allowed local courts to reduce from twelve to six the number of jurors in criminal cases was an *ex post facto* law as applied to a defendant whose alleged offenses predated its enactment. For the reasons stated by the court in *Iseton,* 472 N.E.2d at 652, we question whether *McSears* was correctly decided; the majority in *McSears* appears to have misconstrued the decision of the Supreme Court of the United States in *Ballew v. Georgia,* 435 U.S. 223, 98 S.Ct. 1029, 55 L.Ed.2d 234 (1978).

Even if we were persuaded that *McSears* was correctly decided—and we do not think it was—that decision would not control this case. To substitute a jury of six for a jury of twelve, without requiring any showing of "extraordinary circumstances," constitutes a far more substantial departure from any twelve-juror "norm" than the JTAA effected in the District. Here, an

eleven-member jury was permitted to return a verdict solely because of the existence of a true emergency, namely, the death of a deliberating juror's wife. If, as a majority of the courts have held, a defendant may properly be tried by a six-person jury pursuant to a statute enacted after the underlying conduct occurred, then, *a fortiori,* a verdict may be returned by an eleven-member jury where, as here, extraordinary circumstances were shown.

**4.** *See also Landgraf v. USI Film Products,* 511 U.S. 244, ——, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229 (1994), a case in which the Court recently recognized that the enactment of an amendment to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.,* which amendment granted litigants the right to a jury trial, "is plainly a procedural change of the sort that would ordinarily govern in trials conducted after its effective date ... regardless of when the underlying conduct occurred."

that statute. *Cf. Landgraf, supra* note 4, 511 U.S. at ——, 114 S.Ct. at 1502.

### III.

■ At the time of Duvall's trial, Rule 23(b) of the Superior Court's Criminal rules authorized a jury of fewer than twelve members to return a verdict only if the parties stipulated in writing to this procedure. The Rule contained no provision permitting the court to accept a verdict from an eleven-member jury without the consent of both parties. Rule 23(b) was not amended to conform to the JTAA until July 1, 1995, more than three months after Duvall's trial.

The legislative history of the JTAA includes a statement that the statute would "allow the D.C. Superior Court to adopt a rule similar to the Federal Rule of Criminal Procedure with respect to accepting a verdict from a jury of less than [twelve members]." Council of the District of Columbia, Committee on the Judiciary, Report on D.C. Law 10–232, at 2 (Oct. 12, 1994) (Committee Report). Relying on the Committee Report, Duvall now claims that the JTAA did not invest the trial judge with the power to allow an eleven-member jury to return a valid verdict. Rather, according to Duvall, the statute merely authorized the Board of Judges of the Superior Court to promulgate a rule of court which would permit an individual judge to take such action.[5] We find this contention unpersuasive.

Duvall's interpretation of the JTAA cannot be reconciled with the unambiguous statutory language. *See supra* note 1. The JTAA says nothing whatever to suggest that its applicability depends on changes in the Rules of the Superior Court. Rather, it provides that if extraordinary circumstances require that a juror be excused after deliberations have begun, then, in the discretion of the court, "*a valid verdict may be returned by the remaining eleven jurors.*" D.C.Code § 16–705(c) (emphasis added). The statute could not be clearer. It provides the trial court with unconditional authority, in appropriate circumstances, to proceed to verdict with eleven jurors, irrespective of whether or not a conforming change has been made in the rules of the court.

■ In construing the JTAA, we "must first look at the language of the statute by itself to see if the language is plain and admits of no more than one meaning." *Peoples Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751, 753 (D.C.1983) (en banc). "The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used." *Id.* "It is elementary in the law of statutory construction that, absent ambiguity or an absurd or unreasonable result, the literal language of a statute controls and resort to legislative history is not only unnecessary but improper." *Elm City Broadcasting Corp. v. United States,* 98 U.S.App. D.C. 314, 319, 235 F.2d 811, 816 (1956) (citing

---

5. Duvall failed to present to the trial court his specific contention that the JTAA was not self-executing, and that it merely authorized the Superior Court to amend Rule 23(b). The United States therefore asks us to apply the "plain error" standard of review. Duvall responds that his contention regarding the relationship between the statute and the rule "is not a new argument made for the first time on appeal, but a more thorough exposition of the argument already presented to the trial judge." He claims that the point was "adequately preserved by counsel's objection and argument below."

The phrase "more thorough exposition" may be something of an understatement, for the notion that the JTAA required a rules change before it became effective does not appear to have been presented to the trial court at all. We perceive some merit, however, in Duvall's claim that his trial counsel "had to state his objection within seconds in his motion for a mistrial." *Cf. McCall*

*v. United States,* 596 A.2d 948, 960 (D.C.1991) (dissenting opinion) ("[c]ounsel was understandably taken off guard by a completely unexpected denouement"). Counsel did have an opportunity, on the other hand, to file a motion for a new trial, and the issue was not raised by post-trial motion either.

Taking the record as a whole, we would find it difficult to conclude that Duvall has adequately preserved for appeal his theory that the JTAA could not become effective until the Superior Court had amended its rules. We need not, however, definitively rule on the question whether the plain error standard applies. *See Foote v. United States,* 670 A.2d 366, 371 & n. 14 (D.C. 1996). Even if we were to assume that the point has been preserved, and that our review of this legal issue is *de novo,* we would be obliged, for the reasons stated in the text below, to reject Duvall's position on its merits.

*United States v. Missouri Pac. R. Co.*, 278 U.S. 269, 278, 49 S.Ct. 133, 136, 73 L.Ed. 322 (1929)). Although we have sometimes considered legislative history in cases where the ostensible clarity of a statute is only superficial, *see Peoples Drug Stores, Inc., supra,* 470 A.2d at 755, this is not such a case. We discern no basis for disregarding the plain language of the JTAA or for importing into that statute considerations or conditions with respect to which it is absolutely silent.

Moreover, even if the JTAA were ambiguous, which it is not, its legislative history would not require us to adopt Duvall's proposed interpretation. Although the Committee Report reflects an intention on the part of the Judiciary Committee to authorize the Superior Court to amend Rule 23(b), there is no suggestion in the legislative history that the statute should not become effective until after such a change in the rules has been promulgated.[6] On the contrary, the Committee Report explicitly states that the JTAA "would amend D.C.Code § 16–705(c) *to allow a judge of the D.C. Superior Court* to take a verdict from eleven jurors in a criminal case where the court finds it necessary to excuse a juror for just cause after the jury has returned to consider its verdict." Committee Report at 6 (emphasis added). Duvall contends that only the Board of Judges, and not a single judge, could effectuate the JTAA, but the italicized language tends to refute this contention, for the authority of the judge is not conditioned in the quoted sentence upon the amendment of a Superior Court rule. Accordingly, we construe the JTAA according to its terms and conclude that the trial judge correctly invoked her authority pursuant to that statute, notwithstanding that at the time of trial, the Superior Court had not yet adopted a conforming amendment to Rule 23(b).

*Affirmed.*[7]

---

6. The reference in the Committee Report to the Superior Court's authority to change its rules was precipitated by this court's decision in *Flemming v. United States,* 546 A.2d 1001 (D.C.1988). In *Flemming,* we invalidated an earlier revision of Rule 23(b) (which would have authorized the court, for just cause, to proceed with eleven jurors where it had become necessary to excuse a juror during deliberations) on the ground that the rule as revised was inconsistent with the underlying statute. Section 16–705(c), as it read prior to the enactment of the JTAA, did not authorize eleven-juror verdicts without the consent of the parties. Although, as noted in the Committee Report, one consequence of the enactment of the JTAA would be to authorize the Superior Court to amend Rule 23(b) and to conform it to its federal counterpart, the Report does not state or imply that this would be the *only* consequence of the proposed legislation.

Duvall suggests that if we construe the JTAA literally, such a construction will create an unnecessary conflict between the legislative and judicial branches. In our view, however, the fact that the Superior Court's Board of Judges had amended Rule 23(b), long before the enactment of the JTAA, to authorize eleven-juror verdicts, compels the conclusion that any such conflict is illusory. The Superior Court had, on its own initiative, taken the kinds of steps subsequently authorized by the JTAA, but its efforts were frustrated because, at that time, there was no statutory authorization for those steps.

7. We have considered Duvall's other contentions and conclude that they are without merit. Because the judge was authorized to proceed with eleven jurors, the timing of her release of the bereaved juror and the circumstances of defense counsel's acquiescence in his release are irrelevant. For the reasons stated in the text, the Constitution's *Ex Post Facto* Clause has no bearing on the issues here presented, and Duvall had no legitimate expectation, either on the basis of that Clause or otherwise, that the JTAA would not be applied in his case.