Edward SALMON, Appellant,

v.

UNITED STATES, Appellee.

No. 96–CM–1131.

District of Columbia Court of Appeals.

Argued June 4, 1997.

Decided Nov. 13, 1997.

Jeffrey P. Ehrlich, with whom Jeffrey T. Green, Washington, DC, was on the brief, for appellant.

Simone E. Ross, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney at the time the brief was filed, and John R. Fisher and Thomas C. Black, Assistant United States Attorneys, were on the brief for appellee.

Before SCHWELB, FARRELL and RUIZ, Associate Judges.

SCHWELB, Associate Judge:

Edward Salmon was convicted by an eleven-member jury of one misdemeanor count of threats to do bodily harm to his wife, Charlene Wilson, in violation of D.C.Code § 22–507 (1996). On appeal, Salmon contends that the trial judge abused her discretion by excusing a juror after deliberations had commenced and by permitting the trial to proceed with a jury of eleven. We affirm.

## I.

### THE EVIDENCE

The trial in this case began on the morning of July 1, 1996. The prosecution presented evidence showing that on the evening of September 23, 1995, the young couple[1] were entertaining friends at a dinner party celebrating Ms. Wilson's birthday. The festivities did not go smoothly. One of the guests at the party turned out to be the father of one of Ms. Wilson's three children by men other than Salmon; the man's presence apparently displeased the defendant. Later, Salmon handed a female guest a plate, prompting Ms. Wilson to inquire rhetorically whether he was a "fucking waiter." The evening thus ended with the principal protagonists on less than cordial terms.

On the following morning, Cynthia Gates, a friend of Ms. Wilson, arrived at the apartment to accompany Ms. Wilson on a shopping expedition. Salmon asked his wife where she was going. Ms. Wilson responded, in effect, that Salmon should not worry about it. Ms. Wilson testified that her husband, who had caught "an attitude," grabbed her by the collar, pushed her against some loudspeakers, and stepped on her toes. Ms. Wilson pushed him away; Salmon claimed that she brandished an iron.

Displeased by this turn of events, Salmon left the apartment, picked up a large cinder block, and threw it at or towards the apartment door. Ms. Wilson called 911, complaining of an "unwanted guest," but not identifying the man as her husband. Meanwhile, according to the testimony of Cynthia Gates and of Lakesha Hines, a neighbor of Ms. Wilson, Salmon, who had briefly left the area of the building but had then returned, threatened that he would shoot Ms. Wilson and yelled that he was going to "blow that motherfucker up." Ms. Gates testified that Salmon moved his hand into his jacket, leading her to fear that he might be reaching for a pistol. Ms. Gates passed on this information to Ms. Wilson, who called 911 again and reported that the man about whom she had complained now had a gun. Shortly thereafter, officers arrested Salmon and found him to be unarmed.

Salmon's defense was "provocation." He testified in his own behalf. He admitted that he had threatened to kill his wife, but claimed that he had done so only in response

---

**1.** Salmon was twenty-one years old at the time of trial. The record does not disclose Ms. Wilson's age.

to her threats to kill him.[2] He explained that "[e]motion speaks my head" and that "anybody [will] say anything when they [are] mad."

At the conclusion of the prosecution case, and again after both sides had rested, Salmon moved the court for judgment of acquittal; both motions were denied. Counsel presented their closing arguments[3] and, at 4:20 p.m., the judge excused the jurors, explaining that she would deliver her final instructions at 10:30 a.m. on the following day, Tuesday, July 2, 1996.

On the Tuesday morning, the judge charged the jury as promised. She excused the alternates, and the jurors began their deliberations at 10:55 a.m.

## II.

### THE DECISION TO EXCUSE JUROR NO. 2

At 12:45 p.m., less than two hours after deliberations began, the judge received a note from one of the jurors. The note read as follows:

> It is not [4] clear that we are near the end of our deliberations. I have a 5:15 flight from Dulles and need to leave here not late[r] than 3:00. What to do?
>
> Juror No. 2

The judge immediately called in the attorneys to discuss the juror's note. She directed counsel's attention to the then-recent enactment of the Jury Trial Amendment Act of 1994 (JTAA), D.C. Law 10–232, which provides in pertinent part that

> if, due to extraordinary circumstances, the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion of the court, a valid verdict may be returned by the remaining eleven jurors.

D.C.Code § 16–705(c) (1997).[5] During a brief preliminary discussion of the situation, the prosecutor raised the possibility that further deliberations might be deferred until Monday, July 8, if the juror would be back by then. The prosecutor acknowledged, however, that the jurors might forget some of the testimony if the court were to proceed in this manner. The judge agreed with this concern, and added that there was also the danger "that one of [the jurors] might not come back."

The judge then called in Juror No. 2 to obtain some elaboration of his circumstances. The juror disclosed that his aunt, who had raised him when he was a child, had died in California the previous night. He explained that he would have to leave that evening (Tuesday, July 2) in order to attend the funeral, which was to be held at 11 a.m. on July 3 in a small town "a flight out of L.A."

---

2. Salmon testified that

> [b]oth of us were ... threatening each other. She said she was going to kill me.... She don't give a fuck what happened. She was going to get somebody to kill me.

Salmon claimed that he did no more than "basically repeat" what his wife was saying to him.

3. While the court and counsel were discussing proposed jury instructions, Salmon's attorney argued to the judge that the threats statute would not be violated if the defendant had simply responded to his wife's threats with threats of his own. The prosecutor insisted, to the contrary, that provocation is no defense to a charge of threats. *The judge never specifically ruled on the issue,* but told the attorneys: "You all can make closing arguments that you might like to."

In closing argument, the defense attorney and government counsel then presented apparently conflicting theories of the law. Salmon's attorney told the jurors: "You have evidence here that what Mr. Salmon did was, he simply parroted

back what was said to him ...," implying that such "parroting back" was innocent conduct. The prosecutor responded on rebuttal that "the *defendant's story—that he was merely parroting the words—that's no defense, ladies and gentlemen.*" The jurors were thus left to decide for themselves which attorney had the law right. *Cf. Thomas v. United States,* 557 A.2d 1296, 1305 (D.C.1989) (conviction reversed where trial judge failed to correct prosecutor's erroneous statement as to controlling law). The "provocation" issue has not been pressed on appeal, however, and we have no occasion to decide whether the prosecutor's statement of the law was correct.

4. The word "not" was omitted from the note as it appears in the transcript. The note itself is in the record, however, and contains the word "not."

5. The quoted language also appears, verbatim, in Rule 23(b) of the Superior Court's Rules of Criminal Procedure, which was amended to implement the JTAA.

In response to a question from the judge, Juror No. 2 stated that he expected to return to Washington on Thursday, July 4, so that he would be available on Friday, July 5. After a further telephone inquiry with the airline to determine if he could defer his departure, the juror stated that the last flight to California that he could take that evening left Dulles Airport at 5:14 p.m.

The judge asked the attorneys if they wished to pose any questions to Juror No. 2, but both declined. After ordering the juror to return to the jury room, the judge directed counsel to state their positions as to what action she should take. Salmon's attorney reported that he had discussed the issue with his client, and he said that the defense would "insist" that Juror No. 2 remain on the jury. Claiming that the phrase "extraordinary circumstances" in the JTAA was ambiguous, defense counsel argued:

> I would think that it would mean death of *the juror*, illness, bad health and extreme circumstances *of [the] juror*—him, not some other circumstance which is related to the death of—however sympathetic—of a close relative.

(Emphasis added.) Counsel also asserted that "despite the rule change, I think that he's entitled to have a twelve-person jury under the Constitution, and he's entitled to [a] unanimous verdict." He contended that this right could not be waived through a "Rule amendment."

The prosecutor's position was to the contrary: "I think that this juror has to be released and that we should go forward with eleven jurors." He argued that "[t]his is the exact case that the amendment had in mind when it was passed," because "what's more extraordinary than a death?" Noting that the Supreme Court had held a six-member jury to be sufficient for constitutional purposes,[6] the prosecutor asked the court to invoke the JTAA and to permit the remaining jurors to proceed to verdict.

The judge agreed with the prosecutor. She found "the death of a woman who raised [Juror No. 2] to be an extraordinary circumstance," and she concluded that it would be "appropriate" to allow the juror to be released. In conformity with the judge's ruling, Juror No. 2 was excused and permitted to leave. Salmon's attorney made a somewhat tentative oral motion for a mistrial "for the record."[7] The judge did not expressly rule on the motion, but implicitly denied it by proceeding with eleven jurors.[8]

The remaining jurors resumed their deliberations and ultimately found Salmon guilty as charged. This appeal followed.

### III.

### LEGAL DISCUSSION

On appeal, Salmon presents two principal arguments. First, he asserts that the judge erred in excusing Juror No. 2 because, according to Salmon, there had been no showing of "extraordinary circumstances" within the meaning of the JTAA. Second, he claims that even if extraordinary circumstances were present, the judge abused her discretion by proceeding with eleven jurors instead of declaring a mistrial. We do not agree with either contention.

A. *The standard of review.*

We note at the outset that in our judgment, the trial judge's rulings as to the two defense contentions specifically presented to her by Salmon's attorney were demonstrably correct.

■ Defense counsel first argued, as we have seen, that the phrase "extraordinary circumstances" applies only to the illness or other disability of the juror, and not to the death of a relative. In *Duvall v. United States*, 676 A.2d 448 (D.C.1996), however, we explicitly recognized that the death of a ju-

---

**6.** The prosecutor was apparently referring to *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970).

**7.** Counsel stated no new grounds for this motion, and apparently relied on the two contentions that he had previously presented to the judge.

**8.** The judge subsequently denied a defense motion for a mistrial based on successive notes from the jurors that they were unable to reach a unanimous verdict.

ror's spouse after deliberations had begun constituted "extraordinary circumstances" within the meaning of the JTAA. *Id.* at 451 n. 3. The reasoning of *Duvall* applies with almost equal force to the death of a *de facto* parent who raised the juror. *Duvall* was decided on May 16, 1996, some seven weeks before Juror No. 2 was excused in this case. Salmon's first contention, as articulated in the trial court by his attorney, was thus unavailing.

Defense counsel's second argument in the court below was that, the JTAA to the contrary notwithstanding, Salmon had a constitutional right to a trial by a jury of twelve. This contention has been squarely rejected by the Supreme Court, *Williams, supra* note 6, 399 U.S. at 86–103, 90 S.Ct. at 1898–1907, and by this court. *Duvall, supra,* 676 A.2d at 450–51 (citations omitted).[9]

■ The judge having appropriately disposed of the two contentions which had been presented to her by defense counsel, this would ordinarily end the matter. "[P]arties may not assert one theory at trial and another on appeal." *Cowan v. United States,* 629 A.2d 496, 503 (D.C.1993) (quoting *Hackes v. Hackes,* 446 A.2d 396, 398 (D.C.1982)). "[T]he judge must be fairly apprised as to the question on which [she] is being asked to rule. 'Points not asserted with sufficient precision to indicate distinctly the party's thesis will normally be spurned on appeal.'" *Hunter v. United States,* 606 A.2d 139, 144 (D.C.), *cert. denied,* 506 U.S. 991, 113 S.Ct. 509, 121 L.Ed.2d 444 (1992) (quoting *Miller v. Avirom,* 127 U.S.App. D.C. 367, 369–70, 384 F.2d 319, 321–22 (1967)).

■ To prevail on a ground not presented to the trial court, the defendant must demonstrate plain error, which requires a showing both that the trial court's ruling was obviously wrong and that there has been a miscarriage of justice. *Foote v. United States,* 670 A.2d 366, 369 (D.C.1996). In our judgment, Salmon has not satisfied either of these elements; at best, he has an arguable point as to whether "extraordinary circumstances" existed, and a trial by eleven impartial jurors

is not manifestly unjust. *See, e.g., Williams, supra,* 399 U.S. at 88, 90 S.Ct. at 1899.

We have recognized, however, that difficult questions may sometimes arise at trial with little warning, and that trial counsel (and, indeed, the judge) may be "understandably taken off guard by a completely unexpected denouement." *Duvall, supra,* 676 A.2d at 452 n. 5 (quoting *McCall v. United States,* 596 A.2d 948, 960 (D.C.1991) (dissenting opinion). That is what happened here; the juror's sudden announcement required prompt action with comparatively little time for research or reflection. Moreover, we have differentiated, in our standard of review analysis, between "claims" and "arguments," and we have held that although claims not presented in the trial court ordinarily will not be considered on appeal, "parties are not limited to the precise arguments they made below." *Mills v. Cooter,* 647 A.2d 1118, 1123 n. 12 (D.C.1994) (quoting *Yee v. City of Escondido,* 503 U.S. 519, 534, 112 S.Ct. 1522, 1532, 118 L.Ed.2d 153 (1992)).

■ In our view, these principles permit us to consider on their merits at least some of the more refined arguments which appellate counsel for Salmon have made for the first time on appeal. As to those contentions that have been adequately preserved, the parties agree, and we hold, that the appropriate standard for our review of the trial judge's rulings is for abuse of discretion. D.C.Code § 16–705(c); *United States v. Glover,* 21 F.3d 133, 135 (6th Cir.), *cert. denied,* 513 U.S. 948, 115 S.Ct. 360, 130 L.Ed.2d 314 (1994); *cf. Leeper v. United States,* 579 A.2d 695, 698–99 (D.C.1990).

B. *The existence of "extraordinary circumstances."*

■ Salmon contends in this court that the trial judge abused her discretion by permanently excusing Juror No. 2. He acknowledges that the death of the juror's aunt warranted his release to attend the funeral, but argues that jury deliberations should simply have been deferred until the juror's return. Salmon asserts that the judge should have focused on "the nature and dura-

---

9. Salmon had not pressed this constitutional argument on appeal.

tion of the [juror's] absence" rather than on "the seriousness of the triggering event," and that her failure to do so was error.

We have previously adverted to the discussion between court and counsel regarding the possibility of a brief adjournment of the trial. Specifically, the prosecutor suggested that deliberations might be suspended until after Juror No. 2's return, although he expressed concern that, by then, the jurors might not recollect the evidence. The judge rejected the suggestion that deliberations be deferred, not only for the reason stated by the prosecutor, but also because she apprehended that other jurors might become unavailable.

Salmon can hardly contend that the judge's concern was baseless. The jurors in this case had been selected on July 1 for what was expected to be a very brief trial. The presentation of the testimony took little more than half a day. Participants had every reason to anticipate that the proceedings would be completed well in advance of the July 4th holiday, and that the trial would not affect any plans they and their families might have for the approaching four-day weekend. Significantly, Salmon's attorney did not utter a word in support of the prosecutor's suggestion that jury deliberations be postponed.

Moreover, if the trial judge had decided on the course which Salmon's appellate attorneys now favor, but which his trial counsel never suggested to the court, serious additional concerns would have arisen. The judge was dealing with a bereaved juror who was compelled, upon short notice, to travel to California to attend the funeral of a close relative. He expected to return on July 4th, but unanticipated problems and delays could obviously arise in such a situation. See Johnson v. United States, 619 A.2d 1183, 1187 (D.C.1993) (discussing danger of emo-

tional incapacitation of juror who has lost a parent during deliberations). Indeed, given the juror's necessary departure for California and the upcoming holiday followed by a weekend, failure to excuse the juror would have raised the realistic possibility of having to suspend jury deliberations for nearly a week. See, e.g., United States v. Stratton, 779 F.2d 820, 832 (2d Cir.1985) (four and one-half day delay would risk dulling jury's recollection of evidence and arguments and would pose danger that jurors would discuss case with outsiders). Because of the emergency nature of the juror's problem, the judge had to decide on the appropriate course of action in a short time.[10] In our view, she made a reasonable call.

The principal authorities on which Salmon relies are readily distinguishable. In United States v. Tabacca, 924 F.2d 906 (9th Cir. 1991), the jury reported that it was deadlocked after one and one half days of deliberation. The trial judge excused the jurors for the three-day Labor Day weekend. On the Tuesday after Labor Day, one of the jurors called in and stated that his wife had taken his car keys and that he was unable to come to the courthouse. Defense counsel specifically asked the judge to reconvene the jury the following day. The trial judge nevertheless decided to proceed with eleven jurors pursuant to Rule 23(b) of the Federal Rules of Civil Procedure. The remaining jurors returned a guilty verdict approximately two hours later. The Court of Appeals reversed the defendant's conviction, holding that "just cause"[11] for permanently excusing the juror had not been shown. Id. at 913–14.

Tabacca differs from the present case in decisive respects. First, the defendant's position in the trial court was the same as his position on appeal—he asserted in both courts that the judge should have deferred

---

**10.** It is, of course, advisable for the judge to make as explicit and as thorough findings in this kind of situation as circumstances permit. If appellate review is to be effective, this court should be apprised as fully as possible regarding the considerations that informed the trial judge's exercise of discretion.

Although, in this case, the judge did not specifically mention the kinds of problems of a bereaved juror which the court discussed in Johnson, she did refer to the importance of

"reliev[ing] whatever anxiety he must undoubtedly have." The judge's failure, during the necessarily hurried proceedings, to make explicit mention of the Johnson considerations does not, in our view, preclude us from adverting to them on appeal.

**11.** The Federal Rule is identical to Super. Ct. Crim. R. 23(b) and to the JTAA, except that it requires a showing of "just cause" but not of "extraordinary circumstances."

jury deliberations for a day so that the twelfth juror could resume his participation. Second, in assessing the existence of "just cause" or "extraordinary circumstances," the unavailability of a juror's car keys for a single day cannot reasonably be compared with the death of a *de facto* parent and the unexpected need to fly across the country for the funeral.[12] Finally, the three-day holiday was over by the time that the judge ruled, and there was no reason to anticipate the loss of other jurors on the basis of a single day's delay.[13]

In *United States v. Araujo*, 62 F.3d 930 (7th Cir.1995), the jury had been deliberating on a Thursday and Friday preceding the three-day weekend marking Dr. Martin Luther King's birthday, but had not yet returned a verdict. On the following Tuesday, the temperature in Chicago was twenty degrees below zero, and one of the jurors was unable to reach the courthouse. On the Wednesday, that juror arrived in court, but another juror called in to report that he had experienced car trouble, that he was stranded on the highway, and that he was unable to come to court. The prosecutor suggested that the juror be excused, but Araujo's attorney objected, requesting that "we wait and allow this individual some time." *Id.* at 932. Over defense objection, the trial judge decided to proceed without the absent juror from the jury. The eleven-member jury returned a verdict of guilty.

The appellate court reversed Araujo's conviction. The court held, *inter alia*, that "when the record is unclear as to the juror's inability to serve, and when the facts that are known leave open the possibility that the juror might have been able to resume her service after a reasonably brief delay, just cause for dismissal most likely is lacking." *Id.* at 935.

The grounds upon which we have distinguished *Tabacca* apply to *Araujo* as well; Araujo preserved his position in the trial court; Salmon did not. Being stranded with car trouble is not at all like losing a close relative and having to travel far away. Finally, as in *Tabacca*, the three-day holiday was over.

In light of our decision in *Duvall*, the trial judge would not have abused her discretion by excusing Juror No. 2 even if Salmon had presented to the trial court the claims on which he now relies. Because he did not do so, we conclude, *a fortiori*, that there was no error.

### C. *Refusal to declare a mistrial.*

Salmon contends that even if Juror No. 2 was properly excused, the trial judge abused her discretion by denying his motion for a mistrial. He relies primarily on the Advisory Committee's note to Fed.R.Crim.P. 23, in which the Committee stated:

> The [1983] amendment provides that if a juror is excused after the jury has retired to consider its verdict, it is within the discretion of the court whether to declare a mistrial or to permit deliberations to continue with 11 jurors. *If the trial has been brief and not much would be lost by retrial, the court might well conclude that the unusual step of allowing a jury verdict by less than 12 jurors absent stipulation should not be taken.* On the other hand, if the trial has been protracted the court is much more likely to opt for continuing with the remaining 11 jurors.

(Emphasis added.) Salmon's trial was short, and, according to him, a mistrial was therefore the appropriate remedy. We do not agree.

This issue has been preserved for appeal barely, if at all. During a discussion between court and counsel as to how and when the judge's decision to excuse Juror No. 2 should be communicated to the remaining jurors, Salmon's attorney stated: "Well, *I guess,* first of all, I move for a mistrial based on that, *just for the record."* (Emphasis added.)

---

12. Although the court did not discuss the issue, it appears that the problem could have been resolved by sending a taxi (or a court vehicle) to pick up the juror. Given the risks potentially presented by proceeding with eleven jurors, the money would surely have been wisely spent.

13. The jury's report that it was deadlocked provided an additional reason to proceed with great caution before releasing a juror.

Counsel provided no reasons for this rather half-hearted request, and he must therefore have been relying on his earlier erroneous contentions that the JTAA does not apply to the death of a member of a juror's family and that the Constitution requires a twelve-member jury. His position in the trial court is a far cry indeed from his position on appeal, for his principal claim in this court is that a mistrial should have been granted because the trial was short and because a retrial therefore would not be costly. But even if we assume, without deciding, that Salmon's appellate contentions are properly before us, we are satisfied that there was no abuse of discretion.

■■■ "A mistrial is a severe remedy—a step to be avoided whenever possible, and one to be taken only in circumstances manifesting a necessity therefor." *United States v. Clarke,* 306 U.S.App. D.C. 251, 264, 24 F.3d 257, 270 (1994) (citation and internal quotation marks omitted). We will reverse an order denying a motion for a mistrial only "if the decision appears irrational, unreasonable, or so extreme that failure to reverse would result in a miscarriage of justice." *Bragdon v. United States,* 668 A.2d 403, 405 n. 2 (D.C.1995) (per curiam). Salmon has made no such showing.

The declaration of a mistrial, like the reversal of a conviction, requires the court and the parties to begin the trial all over again. A mistrial therefore

> entails substantial social costs: it forces jurors, witnesses, courts, the prosecution, and the defendants to expend further time, energy, and other resources to repeat a trial that has already once taken place; victims may be asked to relive their disturbing experiences.

*United States v. Mechanik,* 475 U.S. 66, 72, 106 S.Ct. 938, 942, 89 L.Ed.2d 50 (1986); *see also Allen v. United States,* 603 A.2d 1219, 1228 n. 19 (D.C.1992) (en banc).

If the case is retried immediately, then, in a busy urban trial court, it necessarily "bumps" another trial in which the parties and counsel are ready to proceed. It is also likely to have a "domino" effect on other previously scheduled trials. Finding new dates may be difficult, for attorneys and witnesses may be unavailable. It is also important to note that defendants whose trials must be postponed because Salmon must be tried again may well be in pretrial detention, a situation that is prolonged by such a postponement. If, on the other hand, the trial of the defendant's case is deferred until a significantly later date, then

> [t]he passage of time, erosion of memory, and dispersion of witnesses [14] may render retrial difficult, even impossible.... Thus, while reversal may, in theory, entitle the defendant only to retrial, in practice it may reward the accused with complete freedom from prosecution, ... and thereby cost society the right to punish admitted offenders....

*Mechanik,* 475 U.S. at 72, 106 S.Ct. at 942 (citations, internal quotation marks, and brackets omitted).

■ The price of a retrial is one that society must be prepared to pay if the defendant's initial trial was unfair and if a miscarriage of justice resulted. This case, however, does not entail an injustice. Salmon's sole contention is that he was found guilty by eleven jurors instead of by twelve. So far as the record reveals, all eleven jurors were impartial, and Salmon makes no claim to the contrary. The JTAA expressly states that, in circumstances such as these, eleven jurors can return a "valid" verdict. Moreover, the Supreme Court has held that a jury of six is constitutionally sufficient, and thus compatible with the requirements of basic fairness.

There is nothing magic about the number twelve. The Supreme Court explained in *Williams* that history

> affords little insight into the considerations that gradually led the size of that body to be generally fixed at 12. Some have suggested that the number 12 was fixed upon simply because that was the number of the presentment jury from the hundred, from which the petit jury developed. Other, less circular but more fanciful reasons for

14. The potential unavailability of witnesses is an especially difficult problem in cases of spousal abuse, in which complaining witnesses are frequently reluctant or afraid to testify.

the number 12 have been given, "but they were all brought forward after the number was fixed," and rest on little more than mystical or superstitious insights into the significance of "12." Lord Coke's explanation that the *"number of twelve* is much respected *in holy writ,* as 12 *apostles,* 12 *stones,* 12 *tribes, etc.,"* is typical. In short, while sometime in the 14th century the size of the jury at common law came to be fixed generally at 12, that particular feature of the jury system appears to have been a historical accident, unrelated to the great purposes which gave rise to the jury in the first place.

399 U.S. at 87–90, 90 S.Ct. at 1899–1900 (emphasis in original; footnotes omitted). Indeed, as this court recently noted, "a jury of twelve ... is not deemed to offer any advantage [to] the defendant," and even a statute which permits trial by a jury of six instead of twelve operates "only in a limited and [in]substantial manner to the defendant's disadvantage." *Duvall, supra,* 676 A.2d at 451 (quoting *State v. Maresca,* 173 Conn. 450, 377 A.2d 1330, 1333 (1977)). Assuming that the judge correctly held that the death of the juror's aunt constituted extraordinary circumstances within the meaning of the JTAA—and we have so concluded—Salmon's loss of a twelfth juror is not "miscarriage of justice" material.[15]

Salmon insists, however, that the Advisory Committee note to Fed.R.Crim.P. 23 supports his position and that we should construe the JTAA accordingly. To the extent that the enactment of a District of Columbia statute can be viewed as the adoption of an advisory committee note to a Federal Rule of Criminal Procedure, there is some support for Salmon's position in a few federal appellate decisions. *See, e.g., Araujo, supra,* 62 F.3d at 936 (dictum).[16] We agree, however, with the following discussion of the issue by Judge Patricia Wald, writing for the court in *United States v. Harrington,* 323 U.S.App. D.C. 431, 108 F.3d 1460 (1997):

> Rule 23(b) explicitly and without reservation assigns the stop/go decision to the discretion of the trial court, and nothing in the accompanying Advisory Committee notes, or in any case of which we are aware, cabins this discretion in a way that would call this judge's decision into question. Harrington's argument that his trial was a relatively short and simple one is well taken, but the Advisory Committee notes say only that in such cases, a trial court "might well" decide that a mistrial is appropriate, while for longer and more complex trials courts would be "more likely" to decide against a mistrial. [Fed. R.Crim.P. 23] advisory committee's note. Because Rule 23(b) expressly leaves this decision in the trial court's discretion, and because we find no policy statement, case, or principle of fairness that would invalidate the discretionary decision made by the trial court here, Harrington's challenge to the eleven-member jury verdict fails.

*Id.* at 443, 108 F.3d at 1472; *accord, United States v. Patterson,* 23 F.3d 1239, 1252 n. 17 (7th Cir.1994) ("nothing in the rule requires the judge to declare a mistrial in all brief trials") (citation omitted).[17] Moreover, *Du-*

---

**15.** Our dissenting colleague argues that, because Salmon's claim that he was entitled to be tried by a twelve-member jury is statutorily based, the discussion in *Williams* and *Duvall* is of limited relevance. The statute on which Salmon relies, however, expressly vests discretion in the trial judge, and the opinions in *Williams* and *Duvall* recite considerations which may, and indeed should, inform the judge's exercise of discretion.

**16.** After stating that "we need not consider whether the court abused its discretion in opting to permit the remaining eleven jurors to deliberate to a verdict rather than declaring a mistrial," the court proceeded to consider the issue anyway and stated:

> The option of a retrial will always involve a significant expenditure of money, time, and judicial resources, no matter how brief the trial. In our view, the burden must be of a degree or a kind that is out of the ordinary to justify the decision to deprive the defendant of a jury of twelve.

*Araujo, supra,* 62 F.3d at 937. We respectfully decline to follow the last quoted sentence of this judicial digression, for the court's approach in *Araujo* is difficult to reconcile with *Duvall* or even with *Williams.*

**17.** In one respect, *Patterson* presented stronger grounds for reversal than the present case does. In *Patterson,* the trial judge had not yet released the alternate jurors, and he could readily have substituted one of the alternates for the departing juror. Nevertheless, the appellate court affirmed the defendant's conviction.

*vall* was also a brief trial—not much longer than the present one—and this court affirmed the trial judge's denial of the defense motion for a mistrial.

The trial in this case was in fact a short one. If Salmon's attorney had requested a mistrial on that ground, it would have been incumbent upon the trial judge to include that consideration in her calculus in determining whether to grant Salmon's motion for a mistrial. It might then have been a permissible (but not a mandatory) exercise of her discretion to grant the defense motion, especially if the judge could reasonably be assured that all counsel and witnesses would be available on another suitable date, and that the cost of a mistrial, in terms of the impact on other cases and fairness to other affected persons, would not be prohibitive. Unlike our dissenting colleague, we are unwilling to burden the trial court's exercise of discretion in this area with the duty to balance explicitly the *"relative* social costs," *post* at 961 (italics in original), of continuing the trial versus a mistrial. Considerations such as "the length of the trial [or] the complexity of the issues," *id.,* while meant to be objective criteria, can easily yield impressionistic and varying answers on similar facts. Moreover, while the District's statute reflects a "preference in favor of twelve-member juries," *id.,* its purpose is precisely to give the trial court a remedy short of mistrial when extraordinary circumstances have been shown to justify excusing a juror. On the record before us we are satisfied that the judge did not abuse her discretion in allowing the trial to proceed to verdict with eleven jurors.

*Affirmed.*

RUIZ, Associate Judge, dissenting:

This case is one of first impression under the Jury Trial Amendment Act of 1994, D.C. Law 10–232, D.C.Code § 16–705(c) (1997) ("JTAA"). I agree with the majority that

although Salmon's trial counsel did not explicitly state the reasons now advanced on appeal in support of a mistrial, we should review the trial court's ruling on the merits for abuse of discretion. The unanticipated situation presented by the death of Juror # 2's aunt and its consequences provided the parties with no time to research the JTAA or refine their arguments. Both the trial court and counsel in these situations may be "understandably taken off guard by a completely unexpected denouement." *Duvall v. United States,* 676 A.2d 448, 452 n. 5 (D.C.1996) (quoting *McCall v. United States,* 596 A.2d 948, 960 (D.C.1991) (Schwelb, J., dissenting)). In this quickly-developing situation involving a new law, Salmon's counsel cannot be expected to have precisely articulated every reason for requesting a mistrial. During the trial court's brief discussion on the subject, Salmon's counsel raised two arguments objecting to dismissal of Juror # 2, and, when the trial court decided to dismiss the juror over counsel's objection, moved for a mistrial. We would be in a different posture had Salmon's counsel not requested a mistrial. *See Cowan v. United States,* 629 A.2d 496 (D.C. 1993).

The Jury Trial Amendment Act provides in pertinent part that

(c) The jury shall consist of twelve persons, unless the parties, with the approval of the court and in the manner provided by rules of the court, agree to a number less than twelve. Even absent such agreement, if, due to extraordinary circumstances, the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion of the court, a valid verdict may be returned by the remaining eleven jurors.

D.C.Code § 16–705 (1997).[1]

Salmon argues on appeal that the trial court abused its discretion in dismissing Ju-

---

1. Superior Court Criminal Rule 23 provides:
   (b) *Jury of Less Than Twelve.* Juries shall be of twelve (12) but at any time before verdict the parties may stipulate in writing with the approval of the Court that the jury shall consist of any number less than twelve (12) or that a valid verdict may be returned by a jury of less

than twelve (12) should the Court find it necessary to excuse one or more jurors for any just cause after trial commences. Even absent such agreement, if, due to extraordinary circumstances, the Court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion

ror # 2 and in denying his motion for a mistrial. Applying a very generous abuse of discretion standard, I would agree with the majority's conclusion deferring to the trial court's discretion in deciding to excuse Juror # 2 due to the "extraordinary circumstances" of the death of his aunt who had raised him, and his resulting need to travel to California to attend her funeral, if the trial court had separately considered the question whether the absence of Juror # 2 warranted a mistrial under the circumstances of this case. See note 7 *infra.* Otherwise, I believe that the trial court's decision to dismiss Juror # 2 does not survive closer scrutiny in light of that juror's offer before he left on Tuesday to complete deliberations on Friday upon his return from California. The trial court failed to consider the offer and did not inquire of the other jurors whether they would be willing to postpone completion of their jury duty for a few days in order to accommodate their fellow juror's unanticipated need to attend his aunt's funeral.[2]

I disagree with the majority with respect to Salmon's second argument, that the trial court abused its discretion in denying Salmon's motion for a mistrial after the court dismissed Juror # 2. The proper course of action, after considering the brevity and simplicity of Salmon's trial,[3] was to declare a mistrial rather than proceed, over the objection of the defendant, with an eleven-member jury.

The Advisory Committee's note to Federal Rule of Criminal Procedure 23[4] provides that:

> [I]f a juror is excused after the jury has retired to consider its verdict, it is within the discretion of the court whether to declare a mistrial or to permit deliberations to continue with 11 jurors. *If the trial has been brief and not much would be lost by retrial, the court might well conclude that the unusual step of allowing a jury verdict by less than 12 jurors absent stipulation should not be taken.* On the other hand, if the trial has been protracted the court is much more likely to opt for continuing with the remaining 11 jurors.

(Emphasis added.) While recognizing that the decision to declare a mistrial or allow deliberations to continue with only eleven jurors is within the trial court's discretion, the Advisory Committee note is not silent as

---

of the Court, a valid verdict may be returned by the remaining eleven (11) jurors.

2. I cannot subscribe to the majority's reliance on the "realistic possibility of having to suspend jury deliberations for nearly a week," see *ante* at 954, because there is no reason based on the particulars of this case for the trial court to have been concerned about a seven-day delay. The delay might not have been longer than two days, if deliberations resumed on Friday as Juror # 2 suggested, which is the usual break for a weekend. Indeed, the weekend break in this case would have been three days if the Fourth of July had fallen on Friday instead of Thursday. Even assuming that deliberations would not have resumed until Monday, after a four-day break, there is no reason why a willing jury could not do as good a job on Monday as it could on Friday.

The majority's reliance on *United States v. Stratton,* 779 F.2d 820 (2d Cir.1985), to support the trial court's decision to proceed with an eleven-member jury rather than risk a break of four and a half days is misplaced. In *Stratton,* after being informed before the jury began its deliberations that a juror would need to absent herself to observe a religious holiday, the defendant refused the trial court's suggestion that the juror be excused and replaced with an alternate, which would have avoided the problem. *Id.* at

830–31. The court noted that the defendant therefore waived any objection to excusing the juror once the anticipated absence occurred after deliberations had begun. *Id.* at 830 n. 9.

3. The trial, which was for one misdemeanor count of threats, took a total of five hours during which five witnesses testified.

4. Federal Rule 23 is substantially the same as the Superior Court's Criminal Rule 23, with the notable exception that the federal rule does not contain the language requiring "extraordinary circumstances" before a juror may be excused once the jury has retired to deliberate. Federal Rule of Criminal Procedure 23 provides in relevant part:

> (b) Jury of Less Than Twelve. Juries shall be of 12 but at any time before verdict the parties may stipulate in writing with the approval of the court that the jury shall consist of any number less than 12 or that a valid verdict may be returned by a jury of less than 12 should the court find it necessary to excuse one or more jurors for any just cause after trial commences. Even absent such stipulation, if the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion of the court a valid verdict may be returned by the remaining 11 jurors.

to how that discretion should be exercised, clearly stating that in "brief cases [where] not much would be lost by retrial," the trial court "might well conclude" not to take the "unusual step" of allowing a verdict to be taken by less than a twelve-person jury. *Id.*

The majority applies the usual standard for review of denials of motions for a mistrial, "if the decision appears irrational, unreasonable, or so extreme that failure to reverse would result in a miscarriage of justice." *Bragdon v. United States,* 668 A.2d 403, 405 n. 2 (D.C.1995) (per curiam). Applying that standard, the majority concludes that because there is nothing "magic" about the number twelve as the size for a constitutionally-permissible jury, citing *Williams v. Florida,* 399 U.S. 78, 87–90, 90 S.Ct. 1893, 1899–1900, 26 L.Ed.2d 446 (1970), Salmon has not made the case for a mistrial because his case "does not entail an injustice." *Ante* at 956. That reasoning misses that Salmon's argument on appeal is based on the relevant statute, D.C.Code § 16–705(c), not on the Constitution, and that the trial court's authority to grant a mistrial in this case is governed by the statutory language. When interpreting a statute we look primarily at the statutory language and its context. *Cf. Duvall, supra,* 676 A.2d at 450. Although a twelve-person jury is not constitutionally required, the statute expressly provides that the jury "shall" consist of twelve persons, subject to the exception at issue in this case.[5] *Id.* In the context of D.C.Code § 16–705(c), a verdict rendered by a jury of eleven, although permissible, is clearly a departure from the norm established by the statute. As the Advisory Committee note states, it is an "unusual step" for a court so to proceed. Moreover, the legislative history of the JTAA states that the act was "not intended to

change the basic principle that a jury shall consist of 12 persons." Council of the District of Columbia, Committee on the Judiciary, Report on D.C. Law 10–232 at 2 (Oct. 14, 1994).

The legislative determination that defendants charged with serious crimes in the District are entitled to a jury of twelve should not lightly be set aside. In view of that statutory mandate courts should strive to have verdicts rendered by a jury of twelve. In this regard, I find persuasive the Seventh Circuit's interpretation of when district courts should proceed with eleven-member juries under Federal Rule 23:

> The option of a retrial will always involve a significant expenditure of money, time, and judicial resources, no matter how brief the trial. In our view, the burden [of retrial] must be of a degree or a kind that is out of the ordinary to justify the decision to deprive the defendant of a jury of twelve.[6]

*United States v. Araujo,* 62 F.3d 930, 937 (7th Cir.1995).

Given the statutory preference for twelve-person juries, therefore, the inquiry whether to grant a mistrial does not end once it is determined that there is "just cause" due to "extraordinary circumstances" to dismiss a juror. That is but the preliminary step that makes the inquiry about a mistrial necessary. The lesson to be learned from the Federal Rules Advisory Committee note is that the second step, whether to grant a mistrial or proceed with an eleven-person jury, should be made with an eye toward the details of each controversy. Just as the "just cause" and "extraordinary circumstances" determinations are made on a case-by-case basis, the determination to proceed with eleven jurors or to declare a mistrial should be made by

---

5. The statute also allows a verdict by an eleven-member jury with the consent of the parties.

6. In *Araujo, supra,* the court held that "just cause" did not exist for the dismissal of the juror and thus did not decide the question of whether a mistrial would have been appropriate under the circumstances of the case, a five-day trial of two defendants on a single charge. The majority eschews *Araujo's* insistence on twelve-person juries absent "out of the ordinary" burdens to retrial as difficult to reconcile with our decision in *Duvall* or with *Williams.* The cases, however,

are easily reconciled. All *Duvall* and *Williams* suggest is that a jury of twelve is not constitutionally required. This does not run counter to *Araujo's* reasoning that once the legislature has made a decision and statutorily set the number of jurors to which a defendant is entitled, a court should strive to see that verdicts are rendered by juries composed of that number. *Araujo's* reasoning, that the burden must be out of the ordinary to justify a decision by less than the statutorily mandated number of jurors, holds true whether the number be twelve or six.

considering the *relative* social costs—rather than the fact that there will be some social costs—after considering the length of the trial, the complexity of the issues and the burden to the parties *against* the District of Columbia's statutory preference in favor of twelve-member juries. The majority's reasoning, however, collapses the inquiry into a single issue: if "extraordinary circumstances" justify excusing a juror, the remaining eleven-member jury proceeds to verdict and mistrial need never be granted.[7] The majority's analysis renders unnecessary and superfluous the statutory language in the JTAA and Rule 23 which expressly vests discretion in the trial court as to whether to proceed to verdict once it has determined it is necessary to excuse a juror due to extraordinary circumstances. D.C.Code § 16–705(c) (*"[I]f, due to extraordinary circumstances, the court finds it necessary to excuse a juror for just cause after a jury has retired to consider its verdict, in the discretion of the court, a valid verdict may be returned by the remaining eleven jurors."*) (emphasis added).

The majority places great reliance on *United States v. Harrington*, 323 U.S.App. D.C. 431, 108 F.3d 1460 (1997). Interpreting Federal Rule of Criminal Procedure 23, the court rejected Harrington's argument that the district court should have granted a mistrial, stating that:

> Rule 23(b) explicitly and without reservation assigns the stop/go decision to the discretion of the trial court, and nothing in the accompanying Advisory Committee notes, or in any case of which we are aware, cabins this discretion.... [The defendant's] argument that his trial was a relatively short and simple one is well taken, but the Advisory Committee notes say only that in such cases, a trial court "might well" decide that a mistrial is appropriate, while for longer and more complex trials courts would be "more likely" to decide against a mistrial. Because Rule 23(b) expressly leaves this decision in the trial court's discretion, and because we find no policy statement, case, or principle of fair-

ness that would invalidate the discretionary decision made by the trial court here, [the defendant's] challenge to the eleven-member jury fails.

*Id.* at 443, 108 F.3d at 1472 (internal citation omitted).

The court's reasoning in *Harrington* applying Federal Rule 23(b) does not support the majority's conclusion that there was no abuse of discretion in this case. First, the JTAA and Superior Court Rule 23(b), unlike federal Rule 23(b), require that trial court discretion be exercised under a standard requiring "exceptional circumstances" in addition to "just cause" for excusing a juror. See note 4 *supra*. Therefore, cases interpreting Federal Rule 23(b) are not necessarily persuasive because of the different language controlling trial court discretion. Second, the circumstances in *Harrington* are distinguishable from those in the present case. Harrington's trial took place over the course of three days and involved three felony charges. The presentation of evidence in Salmon's trial, on the other hand, took less than a day and involved only one misdemeanor count. Moreover, unlike in *Harrington*, the jury in this case indicated at several points that it was deadlocked. The defendant's preference for a complete twelve-member jury is particularly important in a case where the jury, through its actions, demonstrates it is having difficulty deciding the case.

Finally, although the court in *Harrington* recognized that there is no mandate to *require* mistrial in short trials, it emphasizes the exercise of trial court discretion. *See Harrington, supra*, 323 U.S.App. D.C. at 443, 108 F.3d at 1472; *Stratton, supra*, 779 F.2d at 832 (stating that "we read the 'just cause' standard ... to encompass a variety of temporary problems that may arise during jury deliberations, confronting the trial judge with the *need to exercise sound discretion as to the procedure to be followed* at a particularly sensitive stage of the trial.") (emphasis added). We have said that a discretionary call

---

7. If this truncated analysis and review are to prevail, greater scrutiny should be applied to the first step, whether there are "extraordinary circumstances" and "just cause" warranting dis-

missal of the twelfth juror over the defendant's objection. In my view, this case would not survive such scrutiny. See p. 959 and note 2 *supra*.

requires, at a minimum, that there be an exercise of discretion applying the correct legal principles to the particular facts of the case. *See Johnson v. United States,* 398 A.2d 354, 363–64 (D.C.1979).

Here there is no indication in the record that the trial court in any way considered the relevant factors in favor of granting a mistrial. *See id.* at 364 ("Just as a trial court's action is an abuse of discretion if no valid reason is given or can be discerned for it, so also is it an abuse if the stated reasons do not rest upon a specific factual predicate.") (citation omitted). The record on this issue is sparse at best. The only discussion concerns whether Juror # 2's situation constituted "exceptional circumstances" warranting that he be excused. There is no ruling on the record on Salmon's motion for a mistrial, let alone consideration on the record of the reasons why a mistrial would or would not be appropriate in this case.[8] The trial court appears to have proceeded on the same erroneous assumption adopted by the majority that once "exceptional circumstances" are found to exist warranting that the juror be excused, the jury should proceed to deliberate with only eleven jurors, without first pausing to consider the brevity and simplicity of the case or the likelihood of a retrial. *But see Duvall, supra,* 676 A.2d at 452 (noting that the JTAA "provides the trial court with unconditional authority, *in appropriate circumstances,* to proceed to verdict with eleven jurors") (emphasis added). In the absence of a record explaining the reasons for denying the motion for a mistrial or providing a basis for discerning the reasons for such a denial, the trial court's summary decision becomes effectively unreviewable on appeal, even under a generous abuse of discretion standard.

Faced with a silent record, the majority substitutes its concern with the "domino" effect a retrial will have on other pending proceedings. That concern, however, cannot be the sole focus and determinative factor in deciding when and if to grant a mistrial. Applying such reasoning, mistrial would never be warranted for any retrial will always

entail some disruption of established schedules and unavoidable expenditure of additional judicial resources. *See United States v. Mechanik,* 475 U.S. 66, 72, 106 S.Ct. 938, 942, 89 L.Ed.2d 50 (1986) (noting that mistrial and retrial "entails substantial social costs: it forces jurors, witnesses, courts, the prosecution, and the defendants to expend further time, energy, and other resources ... [and] victims may be asked to relive their disturbing experiences."); *see also Allen v. United States,* 603 A.2d 1219, 1228 n. 19 (D.C.1992) (en banc), *cert. denied,* 505 U.S. 1227, 112 S.Ct. 3050, 120 L.Ed.2d 916 (1992).

Because the declaration of a mistrial, like the reversal of a conviction by an appellate court, requires that the trial begin anew, trial courts are to strike a balance in implementing the JTAA and Rule 23. As explained by the Federal Advisory Committee note, that balance is to be struck in the context of the particular case, between the expenditure of judicial resources entailed by a mistrial, such as in the case of re-trying protracted litigation, and the deprivation of the defendant's statutory right to a jury of twelve. The JTAA does not, however, contemplate that trial court should avoid the expenditure of *any* resources. The pertinent question is *how much* cost should be tolerated in order to safeguard the competing interest of a defendant's statutory entitlement to a twelve-person jury. A valid concern with unduly burdening the Superior Court calendar might be presented in cases of greater complexity and length or where necessary witnesses may not be available at a new trial. None of those factors appears to exist here. Rigid social-cost reasoning, which attempts to turn the retrial of this particular case into a cog which will bring judicial processes to a halt, proves too much. I fear that the majority's affirmance of the trial court's summary denial of defendant's motion for a mistrial in the context of the present simple, short case implicitly means that the JTAA's allowance of an eleven-member jury verdict in the trial court's discretion has effectively overridden defendant's statutory right to a twelve-per-

---

8. Thus, there is no basis for the majority's conclusion that "on the record before us ... we are satisfied that the judge did not abuse her discre- tion in allowing the trial to proceed to verdict with eleven jurors." *Ante* at 958.

son jury. The importance of this issue merits *en banc* review by the court.