Benjamin E. WHITE, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17183.

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 5, 1962.

Decided Nov. 21, 1962.

See also 106 U.S.App.D.C. 246, 271 F.2d 829.

Mr. J. E. Bindeman, Washington, D. C. (appointed by this court), for appellant.

Mr. Robert A. Levetown, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and Tim Murphy, Asst. U. S. Attys., were on the brief, for appellee. Mr. Nathan J. Paulson, Asst. U. S. Atty., at the time the brief was filed, also entered an appearance for appellee.

Before FAHY, DANAHER and BASTIAN, Circuit Judges.

DANAHER, Circuit Judge.

Appellant was convicted of housebreaking and larceny. He contends that the District Court erred in permitting police officers to testify as to certain admissions and in denying his timely motion for mistrial when the prosecutor called to the attention of the jury that the defendant had failed to take the stand.[1]

About 1 P.M. on September 1, 1961, a stock clerk named Simmons was in the stockroom of Sears Roebuck & Company at 4500 Wisconsin Avenue when the appellant entered. Outside the two main doors to the stockroom were signs reading "For Employees Only." Appellant was wearing a uniform of a type customarily worn by Sears' employees. He extended a greeting to Simmons who observed that the shirt worn by the appellant bore a blue Sears emblem. Simmons thought appellant was a new porter as the latter walked to the area where the television sets were stored. Appellant picked up a "TV" set in a sealed carton and went out through the store carrying the television set.

The following day appellant again entered the Sears store wearing a Sears shirt. Appellant was on the basement level heading back toward the stockroom when Simmons first saw him. Simmons and two other employees walked toward the appellant who then "started walking pretty fast up the steps," got on the escalator and went as far as the second floor where a store detective stopped him. After appellant told the detective he had found the shirt, appellant was asked to accompany the detective to the "security" room. Simmons was summoned and there identified appellant as the "man who had taken the TV set the day before." The store detective then notified Precinct No. 8 nearby, and two Metropolitan police officers came over, arriving about 12:45 P.M.

---

1. On brief, he also had argued that the court erred in admitting into evidence without proper identification a certain television set, the theft of which was charged in the second count. In view of our disposition of the case, we deem unnecessary any further reference to this particular point.

After ascertaining the foregoing and other facts, the Metropolitan police took the appellant back to the precinct. Upon arrival, appellant's name and appropriate information were entered in an arrest book, and a written charge was noted with the arresting officer's name.

The officers then had in their possession obviously adequate evidence of "probable cause," not only to "support the arrest," but if believed by a jury, "ultimately his guilt." But without any justifiable excuse to be gathered from the record, the police did not then present White before a committing magistrate. Instead, they took him to the second floor of their headquarters for the admitted purpose of questioning him in regard to the larceny.[2]

At the trial, defense counsel, retained by the appellant, objected to any statement made by White at the precinct "on the ground it was taken under duress and not voluntarily made."

The trial judge conducted a hearing to ascertain what if any "duress" might predicate the objection. During the hearing in the absence of the jury appellant did not testify. The testimony elicited from the officers supplied no evidence of "duress," and White's admissions were thereafter received in evidence before the jury. Had defense counsel objected on Mallory grounds, we would have a grave question as to whether or not the appellant's admissions would be admissible in view of the opinions of this court on this point. After repeatedly denying the larceny, the appellant finally admitted his act and informed the officers of the address where the television set might be found.[3]

The argument now for the first time advanced that the trial judge should have excluded such admissions on Mallory grounds comes too late considering the record as a whole. We frequently have pointed out that objections to the receipt of evidence should be made in the trial court. Williams v. United States, 113 U.S.App.D.C. 7, 9, 303 F.2d 772, 774, cert. denied, 369 U.S. 875, 82 S.Ct. 1145, 8 L.Ed.2d 277 (1962) and cases cited.

Appellant did not take the stand as the trial was resumed. His counsel had filed no requests for special instructions. Government counsel, apparently intending to counter the argument of defense counsel, undertook to caution the jury "in advance" that the jurors always should keep in mind that the arguments of counsel are not evidence. He reminded the jury of the evidence before it, which included, of course, the appellant's admissions. The prosecutor pointed out that the Government's only exhibit was the television set, recovered pursuant to White's directions. Then he stated:

> "The Government would also bring to your attention the fact that the defendant failed to take the stand. No inference at all is to be given to you by the fact [sic] that he exercised this right. This is a very important right to the individual; it is an important right in our system of justice.

> "It is my job to prove to you—"
> (Emphasis added.)

Defense counsel interrupted and asked for a bench conference. During that colloquy,[4] counsel moved for a mistrial be-

---

2. Mallory v. United States, 354 U.S. 449, 454, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957); cf. Upshaw v. United States, 335 U.S. 410, 414, 69 S.Ct. 170, 93 L.Ed. 100 (1948).

3. One of the officers, not on September 2, but two days later, September 4, 1961, went to the location described by the appellant and there found the set.

4. After counsel had expressed his view respecting the Government's "commenting

on the defendant's failure to take the stand," the judge said to the prosecutor— but not then to the jury:

"THE COURT: I don't think it is very wise to say that, [Prosecutor]. The Court in its charge to the jury will point out that no inference of guilt whatsoever arises from the defendant's failure to take the stand.

"I do think it is better in these situations to refrain from such comment. It might sound as though you are, by in-

cause of the prosecutor's comment "on the failure of the defendant to take the stand." The motion for mistrial was denied. We think there was error.

Even if the judge had then admonished the prosecutor and had promptly instructed the jury on the point, we would have had a close question. At least in those circumstances the jurors might have tried to eliminate from their thinking any possible inference of guilt from the appellant's failure to refute or explain his admissions [5] or otherwise to counter what had been offered against him. Of course, the jury knew that White had not testified.

Here the judge did neither. He made no reference to the challenged episode in his charge. Although later he correctly instructed the jury "that no inference of guilt arises against the defendant because of his failure to testify as a witness in his own behalf" and properly explained the rationale of the rule, we are not persuaded that no prejudice arose. The prosecutor's statement had been made openly in argument before the jury. The colloquy, the judge's comment

and his ruling on the motion for mistrial had occurred at the bench. The jury was without knowledge of what had there been said. How much "prejudice" may be attributable to an occurrence of this sort we have no way of knowing. The Supreme Court has said "The minds of the jurors can only remain unaffected from this circumstance by excluding all reference to it." [6] We have noted that "strict observance [of this principle] has been many times commended to prosecuting attorneys." [7]

We have carefully considered all aspects of the case in our effort to determine whether or not there was harmless error. Fed.R.Crim.P. 52(a) reads: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." But it is beyond doubt that an accused is afforded a "substantial right" in deciding whether or not to take the stand.[8] We find ourselves unable to say with fair assurance and in the total setting here presented, that there was no prejudice.[9]

Reversed.

---

ference, putting some suggestion or connotation on this fact. I recognize that that is not your intention. I would never mention this in the trial of a criminal case."

5. We assume it to be unlikely that they will be offered at a new trial.

6. Wilson v. United States, 149 U.S. 60, 65, 13 S.Ct. 765, 37 L.Ed. 650 (1893).

7. Milton v. United States, 71 App.D.C. 394, 396, 110 F.2d 556, 558 (19'0); cf. Stewart v. United States, 366 U.S. 1, 2, 81 S.Ct. 941, 6 L.Ed.2d 84 (1961): "Ordinarily, the effectuation of this protection is a relatively simple matter—if the defendant chooses not to take the stand, *no comment or argument about his failure to testify is permitted.*" (Emphasis added.) And see Turner v. District of Columbia, 98 A.2d 786 (D.C. Mun.App.1953); Brooks v. District of Columbia, 48 A.2d 339, 341 (D.C.Mun. App.1946).

8. Bruno v. United States, 308 U.S. 287, 292, 60 S.Ct. 198, 84 L.Ed. 257 (1939). Indeed, if the accused decides *not* to testify, it is fatal to refuse an instruction that his failure to take the stand shall not tell against him. Ibid.; cf. Langford v. United States, 178 F.2d 48, 55 (9 Cir. 1949).

9. Kotteakos v. United States, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); Starr v. United States, 105 U.S. App.D.C. 91, 94–96, 264 F.2d 377, 380– 382 (1958), cert. denied, 359 U.S. 936, 79 S.Ct. 652, 3 L.Ed.2d 639 (1959). In any event, it does not "affirmatively" appear from the whole record that there was no prejudice. Bihn v. United States, 328 U.S. 633, 638, 66 S.Ct. 1172, 90 L. Ed. 1485 (1946). Cf. Campbell v. United States, 85 U.S.App.D.C. 133, 176 F.2d 45 (1949).