Antonio B. JOHNSON, Appellant,

v.

UNITED STATES, Appellee.

No. 92–CO–470.

District of Columbia Court of Appeals.

Argued Jan. 15, 1993.
Decided Feb. 5, 1993.

---

Richard Huber, Washington, DC, appointed by the court, for appellant.

Steven J. Durham, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Elizabeth Trosman and Randall D. Eliason, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before FERREN, STEADMAN and FARRELL, Associate Judges.

STEADMAN, Associate Judge:

On the second day of jury deliberations in appellant's first trial on a ten-count indictment, the trial court declared a mistrial, over the defendant's objection, on grounds of "manifest necessity." Before us is an expedited interlocutory appeal from a trial court ruling, prior to commencement of a second trial, denying appellant's motion to dismiss the charges on double jeopardy grounds.[1] We hold that

---

1. A denial of a motion to dismiss based on double jeopardy grounds is immediately appealable. *Green v. United States*, 584 A.2d 599, 601 (D.C.1991) (citing *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977)).

Such an appeal receives " 'full merits review and decision on an expedited basis.' " *Id.* (citing *Gant v. United States*, 467 A.2d 968, 970 (D.C. 1983), *cert. denied*, 466 U.S. 952, 104 S.Ct. 2155, 80 L.Ed.2d 541 (1984)).

under the circumstances of this case, the trial court in the first trial did not abuse its discretion in declaring a mistrial for manifest necessity. Accordingly, we affirm the order denying the motion to dismiss.

## I.

The jury deliberations in the first trial commenced at approximately 2 p.m. on Wednesday, October 2, 1991. Shortly thereafter, the foreperson of the jury sent the following note to Judge Ryan, who presided at the trial:

> The majority of us [have] some grave concerns as to the ability of one of the jurors to make mentally sound decisions based on the facts and evidence presented in the case. We the majority are concerned about his mental capacity as a whole. Furthermore, he has decided how he is going to vote on subsequent counts in advance of our voting on them. We have been concerned about these matters since the start of the trial.

Judge Ryan elected not to respond to this note, opting instead to "let them deliberate for a while." After further deliberations failed to produce a verdict, Judge Ryan sent the jury home for the evening.

The jury continued its deliberations the following morning, Thursday, October 3. At 12:05 p.m., the foreperson sent a note to Judge Weisberg, who was sitting in for Judge Ryan. The note read:

> Your Honor:
>
> On yesterday, October 2nd, a note was sent to the previous judge in reference to the mental capacity of one of the jurors. No answer was ever received in reference to that letter, and to be perfectly honest, I as the foreperson have become frustrated.

The juror in question has voted not guilty on several counts (as promised), and he even voted not guilty on a count in which the defendant admitted guilt to. Furthermore, the person in question has very little recollection [of] the facts of the trial. What can be done in this instance, as the majority of jurors [agree] that we want a verdict based on the facts presented in the trial.

During the course of discussion about an appropriate response, the trial court received another note saying that a different juror had to make an urgent phone call concerning his hospitalized father. Over the lunch break, Judge Weisberg learned that the juror's father had passed away and therefore excused the juror.[2] Neither side objected to the course of action concerning the excused juror. Judge Weisberg noted that the excused juror would likely not be able to come back until the following Monday—or perhaps even later—and even then there was a substantial question of whether his mental state would be such that he could carry out his duties as a juror effectively. Additionally, given the other problem concerning the juror described in the notes, Judge Weisberg thought there was "a real difficulty here trying to obtain a verdict from this jury."[3]

The parties discussed the possibility of proceeding with fewer than twelve jurors. The defense was willing to accept a jury of eleven—with only the excused juror being permanently excused. The government, however, was only willing to accept fewer than twelve jurors if both the excused juror and the juror whose conduct was challenged in the notes were permanently excused. After both sides had made their positions clear and after much discussion of what the proper course of action should be, Judge Weisberg declared a mistrial on the grounds of manifest necessity.[4]

---

**2.** We shall refer to this juror as the "excused" juror. It is clear from the transcript that when the trial court excused him, it did so with the proviso, "at least for now."

**3.** Judge Weisberg contemplated conducting a limited *voir dire* of the juror described in the notes, but concluded that such a course of action would be an inappropriate intrusion into the deliberative process of the jury.

**4.** We do not reach the issue whether, absent the problem of the excused juror, the trial court could have declared a mistrial on the basis of the problem of the juror discussed in the notes and the revelation of the jurors' positions on the question of guilt in the notes. The considerable concern and discussion about this issue formed a part of and contributed to, but was not an essential basis for, the trial court's decision, as we read the record.

## II.

 It is basic in American criminal jurisprudence that a trial court may declare a mistrial over the defendant's objection where there is "a manifest necessity for the act," *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824), and that in such a case, the double jeopardy clause of the Constitution does not bar a retrial, *see Richardson v. United States*, 468 U.S. 317, 323–26, 104 S.Ct. 3081, 3084–87, 82 L.Ed.2d 242 (1984). In making the determination, the trial court engages in a two-step inquiry: first, whether a development at trial has given rise to a " 'high degree' of necessity" to terminate the trial, *Braxton v. United States*, 395 A.2d 759, 769 (D.C.1978) (citing *Arizona v. Washington*, 434 U.S. 497, 506, 98 S.Ct. 824, 831, 54 L.Ed.2d 717 (1978)), and second, whether an alternative measure can alleviate the problem. *Douglas v. United States*, 488 A.2d 121, 132 (D.C.1985).

 Whether to declare a mistrial is committed to the "sound discretion" of the trial court, and the reviewing court does not engage in a *de novo* consideration of the issue. *Douglas, supra*, 488 A.2d at 133–34. "A reviewing court ordinarily will accept a trial judge's determination that there is a 'high degree of necessity' for a mistrial, without a less drastic alternative, as long as that determination is reasonable. This is true even when the reviewing court is aware that, if presented with the question in the first instance, other trial judges—or the reviewing court itself—might well be persuaded to continue with the trial." *Id.* at 133 (citations omitted); *see also Carter v. United States*, 497 A.2d 438, 441–43 (D.C.1985). The reviewing court should look at the record as a whole to determine whether the mistrial was justified by "manifest necessity." *Braxton, supra*, 395 A.2d at 769.

## A.

 By statute, in our courts "[t]he jury shall consist of twelve persons, unless the parties, with the approval of the court and in the manner provided by rules of the court, agree to a number less than twelve." D.C.Code § 16–705(c) (1989). Here, the parties were at an impasse: the appellant was only willing to proceed with a jury of eleven members, excluding the excused juror, whereas the government was only willing to proceeding with a jury of ten, excluding both the excused juror and the juror whose conduct had been challenged in the two notes.[5]

Our case law makes it clear that the statute requiring a jury of twelve persons unless the parties otherwise agree is absolute in its terms. In *Flemming v. United States*, 546 A.2d 1001 (D.C.1988), we invalidated a Superior Court rule that purported to allow the trial court to permit a jury to proceed with eleven jurors if the trial court found it necessary to excuse a juror for "just cause" after deliberations began.[6] We squarely held that § 16–705(c) "guarantees twelve jurors to every defendant, *and to the government*, unless they both expressly consent to a lesser number." *Id.* at 1004 (emphasis added).

Appellant argues that notwithstanding the language of the statute and of the holding in *Flemming*, principles of due process forbid the government from withholding its consent to a jury of less than twelve when it is motivated, allegedly the case here, by an unwillingness to accept a jury containing a juror known to be inclined to acquit. No authority is cited for any such proposition and we fail to see how it can be squared with the even-handed principle of requiring the consent of both parties. Obviously, the decision of each party in deciding whether to consent to a lesser number of jurors is going to be guided by that party's own view of the situation, a matter

---

5. While at one point the government stated that it would accept eleven jurors if the court would not make a manifest necessity finding, we construe this as simply a last-ditch truism to avoid double jeopardy.

6. This Superior Court Rule (23(b)) was identical to Fed.R.Crim.P. 23(b) as amended in 1983. In the federal system, a federal rule would prevail over an inconsistent statute pursuant to the provisions of 18 U.S.C. § 3771. No comparable provision applies to our courts.

not readily to be second-guessed. In any event, we hardly see how it is illegitimate for the government to take the view that justice might not be served by its agreeing to a verdict to be rendered by a jury where one of its members has had his mental capacity and capabilities openly challenged by his peers.

## B.

■ Given our conclusion that the government was not required to accept fewer than twelve jurors, we turn to the question whether Judge Weisberg abused his discretion in granting a mistrial based on "manifest necessity." We hold that he did not. We find support in a leading case from the Fifth Circuit which dealt en banc with a situation where a juror's mother had died in the course of a trial, the trial court had declared a mistrial, and the defendant claimed that double jeopardy prevented a retrial. *See Cherry v. Director, State Bd. of Corrections,* 635 F.2d 414 (5th Cir.), *cert. denied,* 454 U.S. 840, 102 S.Ct. 150, 70 L.Ed.2d 124 (1981). In rejecting this argument, the court noted that the trial judge "was acting in accord with the common practice of declaring a mistrial when, for good reason, a judge or juror ceases to attend," and that "[t]he proposition that the legitimate unavailability of a juror is 'manifest necessity' permitting retrial has been widely accepted, in varying formulations," citing numerous cases and other authorities. *Id.* at 419.[7]

Here, as mentioned above, the trial court took particular note that the excused juror could not reasonably be expected to resume until Monday at the earliest, and perhaps not until quite a bit later in the following week. The court further noted that "even then, his mental condition might be such as to make it difficult if not impossible for him to concentrate on the case and follow his oath as a juror." This observation was akin to that made by the *Cherry* court when it stated: "Common experience teaches that the sudden death of a juror's parent would so emotionally incapacitate the juror as to make his uninterrupted service impractical. It is unlikely that he could continue to serve in a manner that would insure a fair trial to either party." *Id.* at 417.

■ Furthermore, no real issue has been taken to the trial court's conclusion that the juror's father's death effectively eliminated the excused juror from further participation. Defense counsel specifically acquiesced to the trial court's excusing the juror during the lunch break, "at least for now." It is true that subsequently, after the ruling of "manifest necessity," defense counsel stated that "for the record, the defense would be willing to wait for that juror," but no request was ever made that the trial court explore further the possibility of reconstituting the jury at some future date. Most importantly, in his motion to dismiss based on double jeopardy filed in the second proceeding before Judge Scott, defendant's sole argument was that the government had violated "fundamental fairness" by refusing to agree to a jury of less than twelve, the same argument that we have rejected above. Since double jeopardy is waived in its entirety if not timely raised by a defendant, *Christian v. United States,* 394 A.2d 1, 38 (D.C.1978), *cert. denied,* 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979); *Wesley v. United States,* 449 A.2d 282, 283 (D.C.1982), it follows that a trial court need only consider in a double jeopardy claim those arguments actually presented to it by the defendant.[8]

---

7. *See also United States v. Wells,* 790 F.2d 73, 74 (10th Cir.1986) ("it is well settled that the legitimate unavailability of a juror creates a situation of 'manifest necessity' in which retrial is permitted"); *Green v. Zant,* 715 F.2d 551, 555 (11th Cir.1983) (citing *Cherry, supra,* for the proposition that "[i]n many cases the nature of the juror's inability will be evident to the court so that a hearing on the issue is unnecessary"); *United States v. Smith,* 621 F.2d 350, 351 (9th Cir.1980), *cert. denied,* 449 U.S. 1087, 101 S.Ct.

877, 66 L.Ed.2d 813 (1981) ("as a general rule the unavailability of an irreplaceable juror makes a mistrial manifestly necessary"); *United States v. Armco Steel Corp.,* 252 F.Supp. 364, 370–71 (S.D.Cal.1966) ("[Jeopardy] does not attach where ... a member of a juror's family becomes ill or dies....").

8. Even in his brief before this court, appellant only in passing raises the possibility that the trial court should have weighed further "the

In sum, we conclude that the trial court did not abuse its discretion in determining that manifest necessity existed for a mistrial. Accordingly, the denial of the motion to dismiss on grounds of double jeopardy is

*Affirmed.*

---

possibility of waiting for the return of [the excused] juror." *See Edmond v. United States Postal Serv. Gen. Counsel,* 293 U.S.App.D.C. 298, 300, 953 F.2d 1398, 1400 (1992) (Edwards, J., concurring in denial of petition for rehearing en banc) (legal argument must be appropriately identified as such, "appearing in a section of the brief devoted to that argument and not as an obscure or passing reference under an unrelated heading, with citations to authorities in its favor"). In any event, an argument not made before the trial court cannot be invoked on appeal except to prevent manifest injustice, not present here. *Miller v. Avirom,* 127 U.S.App. D.C. 367, 369–70, 384 F.2d 319, 321–22 (1967).