**Michael C. BUTLER, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 00–CF–621, 03–CO–1427.**

District of Columbia Court of Appeals.

Argued Jan. 4, 2005.
Decided Oct. 13, 2005.

---

Marc L. Resnick, for appellant.

Katherine M. Kelly, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney at the time the brief was filed, and John R. Fisher, Elizabeth Trosman, and Blane Brooks, Assistant United States Attorneys, were on the brief, for appellee.

Before: TERRY, FARRELL and WAGNER,* Associate Judges.

WAGNER, Associate Judge:

Appellant, Michael C. Butler, appeals from an order of the trial court denying his post-conviction petition for a writ of error *coram nobis*. Appellant argues that the trial court erred in denying his motion without a hearing and that relief was war-ranted because he was denied effective assistance of counsel based on trial counsel's failure to seek a mistrial after the prosecutor improperly commented on his failure to testify. We hold that the trial court did not err in concluding that appellant failed to meet his burden of establishing entitlement to the extraordinary *coram nobis* remedy. Further, we conclude that even applying the standard for ineffective assistance of counsel claims under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), appellant failed to establish prejudice warranting reversal. Therefore, we affirm.

## I. Factual Background

### A. *Evidence Related to the Charges*

Appellant and his co-defendant, Larry McKinney, were charged by indictment with second-degree burglary, second-degree theft and destruction of property. At trial, the government presented evidence showing that appellant and McKinney broke into a house at 3504 Texas Avenue, S.E., in Washington, D.C. and stole property of the owner, James Baxter, and Lawrence Bivens, who also lived there. James Hrobowski, who lived across the street from Baxter and Bivens, testified that on August 25, 1999, he observed from his window two men get out of a car, walk slowly down the street while looking at Baxter's house, and then go up the front steps of the house. Hrobowski testified that appellant and McKinney knocked at the front door, and after no one answered, they walked around the left side of the house. Moments later, Hrobowski heard "a banging noise like they were kicking something or hitting something with a heavy object," coming from the right side of the house, and he called the police at

---

* Judge Wagner was Chief Judge of this court at the time of argument. Her status changed to Associate Judge on August 6, 2005.

911. About five minutes later, the police arrived with their siren and emergency lights activated. Hrobowski testified that as the officers approached, he saw appellant and McKinney come out of the front door of 3504 Texas Avenue, S.E., and walk down a first set of steps.

The officers saw appellant and McKinney, who matched the description of the suspects reported in the radio dispatch the police had received in response to the 911 call, coming down the steps of the Baxter home. McKinney was carrying a "weed whacker," and appellant was carrying a bunch of grapes and a frozen container of Bacardi Breezer. The officers questioned both men about their reason for being at the house. One of the officers then walked to the back of the house, where he observed the rear patio door partially open and the side window broken out. After speaking with Hrobowski, the officers placed appellant and McKinney under arrest. In a search incident to the arrest, the police officers found on McKinney, among other items, a wristwatch and a pair of cuff links.

Baxter testified that he had secured his home before leaving that morning. When he returned, he found shattered glass from a broken window in the patio room at the rear of the first floor, several rooms in disarray, and markings on the "refrigerator and cabinet doors" in the kitchen. He also testified that coins, a watch, and a pair of cuff links were missing from his upstairs bedroom. Baxter also testified that grapes that he had purchased recently were missing from the refrigerator.

Bivens testified that when he returned home from work, he found the house in disarray, including a broken window in the patio room. He testified that items were missing from his bedroom, including cash, a watch, and two cancelled credit cards. Bivens testified that a weed whacker had been moved from its customary place, and he found a bunch of grapes that had been in the refrigerator on the retaining wall in front of the house along with a "Bacardi drink" that previously had been in the freezer. Both Baxter and Bivens testified that they had not given anyone permission to enter their home.

Appellant did not testify at trial. He called as a witness Officer Henry Smallwood, one of the officers who came to the scene of the burglary. Officer Smallwood testified that he saw a pizza box on a table in the dining area on the first floor of the house containing a cold pizza, apparently just removed from the freezer. Defense counsel argued in closing that someone other than appellant and McKinney had burglarized the house earlier the same day and had left the pizza box behind.

### B. *The Prosecutor's Closing Argument and the Instructions*

In closing argument, the prosecutor stated:

Now, in this particular case, this young man who is on trial here, the [d]efendant is exercising his right of not testifying. That's perfectly permissible under our system. It's a right we all have. Since we haven't heard from him, we don't know exactly . . . .

Defense counsel interrupted with an objection, and the court conferred with counsel at the bench. The court asked the prosecutor where he was going with this line of argument. The prosecutor responded, "[w]e haven't heard from [appellant], but we know certain things that might be said in his defense. For example, maybe he was just there. And I was going to impart the idea that there might be some sort of innocent presence." The court then asked the prosecutor why he had to make the argument in the context of appellant's decision not to testify. The prosecutor re-

sponded that he did not have to make the argument in that way and would proceed in a different context. Defense counsel then stated that he was opposed to anything touching on appellant's decision not to testify and that such comment was unfairly prejudicial. The prosecutor then explained that he had not "suggested that there is something wrong with ... [appellant] not testifying or ... [that the jury] should draw any inference from him not testifying ... [b]ut, he might say there is innocent presence here." The prosecutor stated that it was not his intention to say that appellant had to be guilty because he did not testify. The court told the prosecutor:

I don't doubt that it wasn't your intent. But, I think you're in very dangerous territory here and I'm trying to avoid having to declare a mistrial. I hope not to be in a position of having to. I think for everyone's sake we ought to move on to what the [g]overnment's evidence has shown.

The court stated that it would instruct the jury to disregard the prosecutor's last comment, unless the defense requested otherwise. Defense counsel said that he preferred an instruction. The court then instructed the jury as follows:

Ladies and gentlemen, I'm going to instruct you to disregard the last comments by the [p]rosecutor. The [d]efendant in this case has an absolute right not to testify. The fact that the [d]efendant has exercised that right in this case should ... give rise to no inference whatsoever on your part as to his guilt or innocence in the case. He has an absolute right not to testify.

The prosecutor resumed closing argument by discussing the issue of the defendant's intent.

After closing arguments, in its final instructions to the jury, the court also gave the following instruction:

The law does not require a[d]efendant to prove his innocence or to produce any evidence. In this regard, every [d]efendant in a criminal case has the absolute right not to testify. You must not draw any inference of guilt against a[d]efendant because he chose not to testify in this trial.

Neither party objected to the jury instructions as given. The court informed the jurors that they would have a written copy of the instructions in the jury room during their deliberations.

### C. The Verdict

The jury found appellant guilty of second-degree burglary. The trial court found appellant guilty of the misdemeanor counts of second-degree theft and destruction of property. In ruling on these counts, the trial court found that Mr. McKinney stole some or all of the personal property belonging to the complaining witnesses as listed in the indictment and that "at a minimum, Mr. Butler aided and abetted the activities of Mr. McKinney." The court also found that "either or both defendants ... broke the window that is the basis of the destruction of property charge, or at a minimum[,] that Mr. Butler assisted Mr. McKinney in doing so consistent with the [j]ury instruction on aiding and abetting."

## II. Denial of the Petition for Writ of Error *Coram Nobis*

### A. Nature of the Relief Requested

Appellant argues that the trial court erred in denying, without a hearing, his motion for a new trial based on a claim of ineffective assistance of trial counsel. He contends that his counsel was ineffective in that he failed to seek a mistrial after the

prosecutor made remarks that were tantamount to commenting on his failure to testify. The government contends that the trial court did not err in treating appellant's motion filed pursuant to D.C.Code § 23–110 (2001) as withdrawn and denying his petition for a writ of error *coram nobis* seeking the same relief for failure to establish his entitlement to the relief sought.

 Pursuant to D.C.Code § 23–110(a), a prisoner in custody under a sentence of the Superior Court may move to have the sentence vacated for various reasons, including ineffective assistance of counsel. "To meet the in-custody requirement of § 23–110, a prisoner must currently be serving or detained upon a sentence imposed by the Superior Court." *Thomas v. United States*, 766 A.2d 50, 51 (D.C.2001). On March 28, 2000, the court imposed a suspended sentence upon appellant and placed him on probation for a period of two years under the Youth Rehabilitation Act. Appellant's probation expired on March 27, 2002. It was not until July 15, 2003, that appellant filed a motion to vacate sentence pursuant to D.C.Code § 23–110. The trial court gave appellant an opportunity to file a supplemental pleading addressing whether he was "in custody" within the meaning of D.C.Code § 23–110. Appellant requested instead that the trial court consider his motion as a petition for a writ of error *coram nobis*.[1] Thus, appellant did not argue in the trial court, nor does he claim on appeal, that he was in custody within the meaning of D.C.Code § 23–110.[2] Essentially, appellant concedes

that the trial court properly considered his request as one for a writ of error *coram nobis*, rather than for relief under D.C.Code § 23–110. Therefore, we consider appellant's argument that the trial court erred in denying his petition for writ of error *coram nobis*.

B. *Requirements for Issuance of a Writ of Error Coram Nobis*

 "A writ of error *coram nobis* is an 'extraordinary remedy' which should be granted 'only under circumstances compelling such action to achieve justice.'" *United States v. Higdon*, 496 A.2d 618, 619 (D.C.1985) (quoting *United States v. Morgan*, 346 U.S. 502, 511, 74 S.Ct. 247, 98 L.Ed. 248 (1954)). The writ provides the means for "'correct[ing] errors of fact not apparent on the face of the record and unknown to the trial court.'" *United States v. Hamid*, 531 A.2d 628, 631–32 (1987) (quoting *Watwood v. District of Columbia*, 162 A.2d 486, 487 (D.C.1960) (footnote omitted)). A petitioner bears the burden of overcoming the presumption that the proceeding was conducted without error. *Higdon*, 496 A.2d at 619–20 (citing *Watwood*, 162 A.2d at 487). In order to establish that the writ should be granted, a petitioner is required to demonstrate that: "(1) the trial court [was] unaware of the facts giving rise to the petition; (2) the omitted information [is] such that it would have prevented the sentence or judgment; (3) petitioner [is] able to justify the failure to provide the information; (4) the error [is] extrinsic to the record; and (5) the

---

1. In response to the trial court's order, appellant filed a motion "to treat his § 23–110 motion as a writ of [error] *coram nobis*." He stated that his motion was "in lieu of" a supplemental pleading addressing whether he was in custody for purposes of D.C.Code § 23–110. Further, he stated that, "[i]f it is true that ... [he] cannot avail himself of the [D.C.Code] § 23–110 statute to remedy his

attorney's failure to move for a mistrial, then he ... [must] be able to resort to some means of addressing this injustice."

2. The trial court stated in an order that it interpreted appellant's filing as a withdrawal of his motion for relief under D.C.Code § 23–110 and as a request for relief through the issuance of a writ of error *coram nobis*.

error [is] 'of the most fundamental character.'" *Hamid, supra,* 531 A.2d at 634 (quoting *Morgan,* 346 U.S. at 512, 74 S.Ct. 247). Issuance of the writ requires a petitioner to demonstrate an error amounting to a "miscarriage of justice." *(Star) Douglas v. United States,* 703 A.2d 1235, 1236 (D.C.1997) (quoting *Higdon,* 496 A.2d at 620) (in turn quoting *Moon v. United States,* 106 U.S.App. D.C. 301, 303, 272 F.2d 530, 532 (1959)). When the files and record show conclusively that the petitioner is not entitled to relief, no evidentiary hearing is required. *United States v. Liska,* 409 F.Supp. 1405, 1406–07 (E.D.Wis. 1976) (citing *Ybarra v. United States,* 461 F.2d 1195 (9th Cir.1972) (other citation omitted)) (stating the foregoing proposition and requiring an evidentiary hearing where allegations in petitioner's affidavit, if true, might entitle him to *coram nobis* relief). This court reviews the trial court's decision granting or denying such a petition for an abuse of discretion. *See Hamid,* 531 A.2d at 629 (concluding "that the trial court properly exercised its discretion in granting the petition for writ of error *coram nobis*"); *Higdon,* 496 A.2d at 620 (concluding that the trial court abused its discretion in granting the writ of error *coram nobis*).

### C. *Analysis*

In denying appellant's petition for a writ of *coram nobis,* the trial court considered appellant's claim using the criteria set forth in *Hamid, supra,* 531 A.2d at 634 (setting forth the five factors required to establish a claim for *coram nobis* relief). Its reasons for concluding that appellant was not entitled to issuance of the writ are stated succinctly in its written decision as follows:

> First, the defendant has not even alleged the existence of any errors of fact that are in need of correction. All that the defendant has alleged is an error in

professional judgment on the part of his trial lawyer in failing to move for a mistrial. Second, the Court was well aware of the prosecutor's inappropriate comments at the time they were made. There can be no concern that the Court made any decision in the case without a full understanding of the facts and circumstances relevant to that decision. Third, counsel's failure to move for a mistrial had no impact upon the Court's conduct of the trial. The Court immediately addressed the prosecutor's comments and gave a strong curative instruction to the jury. Looking back now several years after the trial, the Court has a very difficult time imagining that it would have declared a mistrial had one been requested. Finally, the Court cannot find that the failure of the defendant's trial counsel to move for a mistrial was an error "of the most fundamental character." Even if it was constitutional error for counsel not to request a mistrial—a doubtful proposition, in the Court's view—the Court is fully satisfied that the error had no impact upon the outcome of the trial, as the Court almost certainly would have denied a motion for a mistrial had one been made.

A review of the record and the trial court's ruling shows that the trial court did not abuse its discretion in denying appellant's petition for relief. The court conducted its analysis using the criteria for making that determination set forth in *Hamid, supra.* 531 A.2d at 634 (citations omitted). Here, appellant did not establish the factors required to show his entitlement to issuance of the writ. As to the first factor, the trial court found, consistent with the record, that appellant did not allege any factual errors, let alone any factual errors of which the trial court was unaware at trial. *See id.* (identifying the

first factor necessary for *coram nobis* relief as the trial court's lack of knowledge of the facts giving rise to the petition). The basis for appellant's claim is fully developed in the trial record. The trial court knew the portion of the prosecutor's argument that appellant challenged at the time it was made. Defense counsel objected to the argument, and the trial court gave a curative instruction. Defense counsel's failure to move for a mistrial is not in itself an error of fact unknown to the trial court. Even if counsel's omission was an error of fact, the record shows that the trial court was aware that defense counsel could, but did not, move for a mistrial. Instead, the trial court acknowledged, at the time, the potential for the prosecutor's comments precipitating a mistrial, took steps to avoid it, and apparently found no reason to declare a mistrial *sua sponte*. From this record, it is clear that the court was aware of the facts giving rise to the petition. *But see Hamid*, 531 A.2d at 635 (concluding that petitioner had made out the first factor for a *coram nobis* petition where it was shown that the trial court was unaware that the defendant and his counsel were under duress that led to their failure to present mitigating evidence at sentenc-

ing).[3] These same circumstances support the trial court's conclusion that the error was not extrinsic to the record as required by the fourth factor cited in *Hamid*. *See id.* at 634 (citations omitted).

 The trial court could also properly find lacking, as it did, the second and fifth factors set forth in *Hamid, i.e.,* that the omission would have altered the outcome of the proceeding and that the error was of the most fundamental character.[4] *Id.* (citations omitted). The trial court was not persuaded that it would have granted a mistrial even if it had been requested. The decision to grant a mistrial is committed to the trial court's discretion. *Johnson v. United States*, 619 A.2d 1183, 1186 (D.C.1993); *Goins v. United States*, 617 A.2d 956, 958 (D.C.1992) (citations omitted). On review, this court "ordinarily will accept a trial judge's determination that there is [,or is not,] a 'high degree of necessity' for a mistrial, without a less drastic alternative, as long as that determination is reasonable." *Johnson*, 619 A.2d at 1186 (quoting (*Bruce*) *Douglas v. United States*, 488 A.2d 121, 133 (D.C. 1985)). "This court will not overturn the trial court's decision unless it appears unreasonable, irrational or unfair, or unless

3. In *Hamid*, this court affirmed the trial court's decision granting a petition for a writ of error *coram nobis*. 531 A.2d at 629. Hamid, a twenty-two year old, had been charged with eleven others with conspiracy to commit kidnaping while armed and kidnaping while armed in connection with the takeover of the B'nai B'rith Headquarters. *Id.* Hamid was convicted and sentenced to 36 to 108 years imprisonment. *Id.* He lost the opportunity for reduction of sentence under Super. Ct.Crim. R. 35 because his then counsel filed the motion out of time, and this court reversed an order of the trial court vacating his sentence under D.C.Code § 23–110 based on ineffective assistance of counsel, having concluded that the right to counsel does not attach to post conviction motions. *Id.* at 630. The information unavailable to the trial court at the time of sentencing was that Hamid and

his counsel were under duress not to present mitigating circumstances, including his limited role in the crime and his personal history that made him vulnerable to duress. *Id.* at 635. "[Hamid] contended that he was prevented from raising a defense at trial and from presenting mitigating factors to the trial court at sentencing due to fear, duress and threats of force and violence directed at [Hamid], [his] family, [his] lawyer, and his lawyers's family by the leader of the Hanafi Muslims, Hamaas Abdul Khaalis." *Id.* at 631, 635.

4. The third factor, justification for the failure to provide the information, is not relevant in the context of the circumstances presented in this case.

the situation is so extreme that failure to reverse would result in a miscarriage of justice." *Goins,* 617 A.2d at 958 (quoting *Lee v. United States,* 562 A.2d 1202, 1204 (D.C.1989) (internal quotation marks omitted)). In determining whether to grant a mistrial, the trial court should consider: (1) whether developments at trial have created a "high degree of necessity" to terminate it, *Johnson,* 619 A.2d at 1186 (citations and internal quotation marks omitted), and (2) "whether an alternative measure can alleviate the problem." *Id.* (citing *(Bruce) Douglas,* 488 A.2d at 132). "Whenever possible, the court should seek to avoid a mistrial by appropriate corrective action which will minimize potential prejudice." *Goins,* 617 A.2d at 958 (citing *(Bruce) Douglas,* 488 A.2d at 132–33). Upon review, we consider "the record as a whole to determine whether the mistrial was justified by 'manifest necessity.'" *Johnson,* 619 A.2d at 1187 (quoting *Braxton v. United States,* 395 A.2d 759, 769 (D.C.1978)). Considering the record as a whole in this case against that standard, the trial court would have been acting well within its discretion in denying such a motion, and the circumstances certainly did not justify a mistrial by the court *sua sponte.*

It is fundamental that "[t]he Fifth Amendment, in its direct application to the Federal Government, and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instruction by the court that such silence is evidence of guilt." *Griffin v. California,* 380 U.S. 609, 615, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).[5] Consistent with this principle, this court has found reversible error where the prosecutor improperly commented on a defendant's right to testify. *(Charles) White v. United States,* 248 A.2d 825, 826 (D.C.1969) (reversing a defendant's conviction where the prosecutor commented, without any curative instruction from the court, on his right not to testify by arguing that the jury heard no testimony contrary to the government's evidence); *Turner v. District of Columbia,* 98 A.2d 786, 787 (D.C.1953) (reversing a conviction where the trial court failed to promptly instruct the jury to disregard the prosecutor's remark commenting on defendant's failure to testify, *i.e.,* that they should not *"necessarily"* draw an inference of guilt by reason thereof). However, not every comment that alludes to a defendant's right not to testify requires a mistrial or reversal on appeal. *See, e.g., McCoy v. United States,* 760 A.2d 164, 186 (D.C. 2000), *cert. denied,* 534 U.S. 900, 122 S.Ct. 227, 151 L.Ed.2d 163 (2001) (holding that prosecutor's comment, in context, did not appear to be "manifestly intended" to comment on defendant's failure to testify, but also finding no substantial prejudice, even assuming the comment was improper);

5. In *Griffin, supra,* the Supreme Court addressed whether a provision of the California Constitution that permitted comment by the court or counsel and consideration by the court or the jury of a criminal defendant's failure to explain or deny the evidence against him was unconstitutional. 380 U.S. at 610–611, 85 S.Ct. 1229. The Court held that the provision violated the Self–Incrimination Clause of the Fifth Amendment, applicable to the states under the Fourteenth Amendment. *Id.* at 611, 613, 85 S.Ct. 1229. The Supreme Court reasoned that under California's comment rule, "the prosecutor's comment and the court's acquiescence are the equivalent of an offer of evidence and its acceptance[,]" *id.* at 613, 85 S.Ct. 1229, and, in derogation of the accused rights under the Fifth Amendment, permitted an inference of guilt from the accused's silence. *See id.* at 614, 85 S.Ct. 1229; *see also Bowler v. United States,* 480 A.2d 678, 682 (D.C.1984) (citing *Griffin,* 380 U.S. at 615, 85 S.Ct. 1229) ("Comment by the prosecutor on the accused's silence violates the [F]ifth [A]mendment.").

*Brewer v. United States,* 559 A.2d 317, 323 (D.C.1989), *cert. denied,* 493 U.S. 1092, 110 S.Ct. 1163, 107 L.Ed.2d 1066 (1990) (holding that the prosecutor's argument that no one who took the witness stand can tell you why the defendant committed the rape, even if improper, was harmless beyond a reasonable doubt) (citing *Chapman v. California,* 386 U.S. 18, 23–24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (other citation omitted)); *(Earl) Coleman v. United States,* 137 U.S.App.D.C. 48, 57, 420 F.2d 616, 625 (1969) (holding that although it was error to permit counsel for one defendant to call three co-defendants to the stand, thereby compelling them to invoke their right to remain silent in the jury's presence, and then comment on their failure to take the stand, the error was harmless beyond a reasonable doubt where the error did not contribute to their convictions); *see also Bowler, supra* note 5, 480 A.2d at 684 (noting that the prosecutor's statements amounting to a comment on appellant's failure to testify by itself did not warrant reversal, but along with the myriad of other errors, reversal was required).

We reversed in *(Charles) White, supra,* because the trial court did not immediately instruct the jury to disregard the comment and inform them on the law governing the defendant's right not to testify. 248 A.2d at 826 (citing *Turner, supra,* 98 A.2d at 787) (other citation omitted) (stating that the trial court "should have admonished the jury that the statement was improper and to disregard it, and then and there should have instructed [the jury] as to the law on the subject," and concluding that a later instruction did not cure the error). In this case, unlike *(Charles) White,* the trial court instructed the jury, immediately after the defense objection and related bench conference, to disregard the prosecutor's remarks and the law regarding the defendant's right not to testify. Although

we cautioned that "[i]n some cases, this procedure might not be sufficient to cure the prejudice resulting from a direct reference to a defendant's failure to testify," this is not such a case. *Id.* (citing *(Benjamin E.) White v. United States,* 114 U.S.App.D.C. 238, 314 F.2d 243 (1962)).

■ *(Benjamin E.) White* is distinguishable from the present case in significant respects. In that case, before bringing to the jury's attention the fact that the defendant had not taken the stand, the prosecutor first reminded the jury of the evidence against the defendant, including his admissions that he had committed the crime and had informed the police where the stolen property could be found. *(Benjamin E.) White,* 114 U.S.App.D.C. at 240, 314 F.2d at 245. Nevertheless, the trial court denied the defense motion for a mistrial, did not provide an immediate instruction to the jury, and made no reference to the challenged remark, although subsequently, the court correctly instructed them on the law. 114 U.S.App.D.C. at 241, 314 F.2d at 246. The Circuit Court reversed for a new trial, noting, however, that if the court had promptly given a curative instruction, it would have been a close question. *Id.* In the present case, the trial court followed that procedure, instructing the jury before proceeding further to disregard the prosecutor's remark and the law regarding a defendant's absolute right not to testify. Unlike *(Benjamin E.) White,* there were no admissions of guilt by appellant juxtaposed with a comment on his failure to testify. Moreover, the prosecutor's comment was interrupted by defense counsel's objection before it could become irreparably damaging. On this record, we are satisfied that, as the trial court concluded, a mistrial would not have been justified. Therefore, the trial court properly concluded that appellant

did not demonstrate that an error occurred of the most fundamental character that would have altered the outcome as required for the issuance of a writ of error coram nobis.[6] *See Hamid, supra,* 531 A.2d at 634.

For the foregoing reasons, the order of the trial court hereby is

*Affirmed.*

---

**6.** Appellant also argues that he was denied effective assistance of counsel under the standard set forth in *Strickland, supra,* 466 U.S. at 668, 104 S.Ct. 2052. He contends that his counsel was deficient in failing to move for a mistrial and that he was prejudiced thereby. Even assuming that the *Strickland* standard applied here, and we do not so hold, appellant could not meet its requirements because he cannot show prejudice. *See id.* at 687, 104 S.Ct. 2052 (holding that to prevail on a claim of ineffective assistance of counsel, appellant must demonstrate that: (1) his counsel's performance was deficient, *i.e.,* that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) "[counsel's] deficient performance prejudiced the defense," that is "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable"); *see also Ready v. United States,* 620 A.2d 233, 234 (D.C.1993), *cert. denied,* 460 U.S. 1025, 103 S.Ct. 1279, 75 L.Ed.2d 498 (1983) (holding that it is not necessary to address whether counsel's performance was deficient, since appellant failed to show prejudice); *(Robert) Griffin v. United States,* 598 A.2d 1174, 1176 (D.C.1991) (observing that "it is sometimes efficacious to address the prejudice prong first since without prejudice there can be no ineffective assistance of counsel") (citations omitted). Appellant cannot show that a motion for mistrial would have been granted even if made. The trial court so stated in ruling on appellant's post-conviction motion and provided persuasive reasons for its conclusions. Further, for the reasons stated in this opinion, we perceive no reason for the trial court to have granted the motion when there was an alternate and effective means to address the prosecutor's misstep without declaring a mistrial. *See Metts v. United States,* 877 A.2d 113, 118 (D.C.2005) (setting forth the standard for reversal of the denial of a mistrial motion as when the court's decision "appears irrational, unreasonable, or so extreme that failure to reverse would result in a miscarriage of justice") (quoting *(Ronald) Coleman v. United States,* 779 A.2d 297, 302 (D.C.2001) (internal quotation marks omitted)). Since a motion for mistrial would have been unavailing, it cannot be said that trial counsel deprived appellant of his Sixth Amendment rights by not making the motion. *See Al–Mahdi v. United States,* 867 A.2d 1011, 1025 (D.C.2005) (holding that counsel's failure to file a non-meritorious motion to suppress statements did not deprive appellant of effective assistance of counsel).