Maxie STEVENS, Appellant,

v.

UNITED STATES, Appellee.

Nos. 04–CM–824, 06–CO–878.

District of Columbia Court of Appeals.

Argued Feb. 12, 2008.
Decided March 13, 2008.

Enid Hinkes for appellant.

Heather A. Hill, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney, and Roy W. McLeese III, James Sweeney, and Youli Lee, a member of the New York Bar, Assistant United States Attorneys, were on the brief, for appellee.

Before WASHINGTON, Chief Judge, THOMPSON, Associate Judge, and FERREN, Senior Judge.

FERREN, Senior Judge:

Appellant was convicted at a bench trial of an attempted threat[1] against the complainant, Henry Harris. Appellant filed a direct appeal (for which no argument has been presented) and a collateral attack on his conviction (in the form of a motion for new trial and petition for writ of error coram nobis) alleging ineffective assistance of trial counsel. The judge who tried the case treated the motion as filed under D.C.Code § 23–110 (2001) and scheduled a hearing, after which she denied the motion in an eighteen-page opinion. She did not rule on the coram nobis petition, the standard for which, she said (and we agree), "is much more stringent than that for vacating a conviction on 23–110 grounds." *See Butler v. United States,* 884 A.2d 1099 (D.C.2005). We affirm.

## I.

Appellant lived in complainant's house, where the two men were taking care of the four children of complainant and his wife, Towanda Harris, as well as the three children of appellant and the same Towanda Harris. This caretaking arrangement had developed because of Ms. Harris's absence in the military. The day of the incident, however, Towanda Harris was at home, arguing with appellant over a pair of shoes. Shortly thereafter, appellant confronted complainant about the argument with Towanda Harris, telling complainant that he "needed to talk to [his] wife about her mouth." Complainant testified that, during this confrontation, appellant told him, "I will put you six feet under because I have a lot next door to my house," and "I will burn ... this mother fucking house down and anybody that's in it"—threats that complainant testified had made him "somewhat scared."

At trial, appellant did not testify, but two of his children testified on his behalf. Appellant's nine-year-old son, who complainant confirmed on direct examination had been seated in a car about four feet away when appellant uttered the threats outside the house, testified that he had not seen his father and complainant involved in any discussion whatsoever. The daughter supplied irrelevant testimony, for she said that she had been in her room at the time. She further testified, unhelpfully (and inaccurately), that her brother had been in his room as well. To rebut complainant's testimony on direct examination that he had been "somewhat scared" of appellant's threats, counsel elicited on cross-examination that complainant had received training as a special police officer. Ultimately, the case came down to an assessment of credi-

---

1. D.C.Code §§ 22–407, –1803 (2001).

bility, and the trial judge accepted complainant's word over that of appellant's son.

## II.

 Appellant argues on appeal that the motions court erred in denying his motion for new trial. In order to demonstrate constitutionally ineffective assistance of trial counsel, appellant must show both that counsel's performance was deficient and that this deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A defendant demonstrates prejudice by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. A defendant has the burden of affirmatively proving prejudice. *Id.* at 693, 104 S.Ct. 2052.

The issues on appeal can be grouped under four headings. *First,* appellant alleges ineffectiveness in trial counsel's investigation and preparation of the case, primarily counsel's failure to introduce evidence of complainant's motive to fabricate the threats charged. Specifically, he stresses, counsel failed to introduce evidence from Lanita Van Dyke that Towanda Harris had falsely claimed that appellant had threatened her (Ms. Harris); that Towanda Harris had told Van Dyke that she was going to get appellant "locked up" and take sole custody of appellant's and her children; that she had given complainant a power of attorney authorizing him to care for her children "because she was in the military"; and that complainant would then be in a position to "put the kids back on [TANF (child welfare)], to try to get a bigger check ... because all of the bills were behind in their house and everything else." Appellant argues that this evidence would have revealed complainant's bias against him and thus complainant's motive to fabricate.

The motions court did not find constitutional deficiency in failing to call Van Dyke as a witness, in part because "Van Dyke's testimony about Towanda Harris' statement to her would not have been relevant to show bias by [complainant] and would, in any event, have been hearsay." But even assuming deficient investigation and trial preparation as to Van Dyke, and further assuming relevance [2] and admissibility [3] of all the evidence from Van Dyke that appellant has proffered, we cannot find prejudice sufficient for reversal under *Strickland.*

 From the trial proceedings it is clear that the motions judge was aware that appellant had custody of his children with Towanda Harris; that appellant and complainant—Towanda Harris's husband—had been living together and jointly caring for all the children of Towanda Harris; and that the living arrangement was unstable: "there was tension" between Towanda Harris and appellant, as evidenced by an earlier fight between them; and there was "some tension" between complainant and appellant about whether appellant "would continue to live in" the Harris home. Accordingly, said the motions judge, even without regard to Lanita Van Dyke's evidence at the motions hearing

---

**2.** We cannot say that Lanita Van Dyke's testimony that Towanda Harris's plan to gain custody of the children "would not have been relevant" to proving complainant's bias against appellant. That testimony implicated complainant in his wife's plan for him to have a power of attorney over all her children and related control of anticipated TANF funds.

**3.** Lanita Van Dyke's proffered testimony does appear, however, to have been, predominantly, hearsay.

about "Towanda Harris' custody complaints" there was evidence in the trial record "from which the Court could infer bias" against appellant. Although the excluded evidence might have reinforced the possibility of complainant's bias, enhancing a motive to fabricate, we are satisfied from the motions judge's own analysis that this evidence did not materially add to what she already knew, as fact-finder at trial, about the parties' relationships, biases, and motives.

In reaching this conclusion, we take into account Lanita Van Dyke's reference at the motions hearing to a factor neither identified at trial nor previously implied by the unstable relationships among the parties: the availability of TANF benefits for appellant's children if Towanda Harris and complainant were to gain custody. Van Dyke's testimony could be interpreted to suggest that complainant might have felt free to use these TANF funds for overdue

family bills not strictly related to the welfare of appellant's children—a possible motive for fabricating a complaint against appellant that the motions court expressly acknowledged.[4] (Appellant does not argue, however, that this testimony could also be interpreted to mean that complainant had been motivated against appellant by the hope of taking control of TANF funds for his own, personal use.) Although a TANF—related argument was not made at trial, the motions judge was aware of the TANF evidence, as well as the other evidence concerning custody, when she ruled on appellant's motion for new trial. Her lengthy ruling makes clear that no additional evidence at the motions hearing, including the TANF evidence, affected her view of complainant's alleged bias.[5] We see no basis for concluding otherwise.

 *Second,* appellant claims ineffectiveness in counsel's failure to object to

---

**4.** According to the motions court, as an alternative to Van Dyke's inadmissible testimony, "a thorough cross-examination of [complainant] might have elicited that . . . he was motivated by the possibility of receiving increased TANF benefits."

**5.** Appellant further contends that trial counsel did not conduct an adequate meeting with him to prepare for trial. Appellant testified at the motions hearing that, before trial, he had unsuccessfully attempted to contact counsel three times, that he had left messages, and that none was answered. To the contrary, counsel testified that he had left phone messages for complainant to meet him at the courthouse on two occasions and that complainant had failed to appear at either time. The motions judge did not resolve this dispute but concluded that even if the failure of the two to get together before trial was due to deficient performance by counsel, "it did not prejudice the defense in this case." In light of the simple defense presented (the word of appellant's young son against that of complainant)—a defense that counsel was able to prepare on the day of trial-we cannot second guess the motion judge's conclusion.

Appellant also submits that trial counsel failed to maintain a comprehensive file, failed to examine the Intra–Family Court file and the divorce files, failed to photocopy the file in this case or make notes from the file, failed to hire an investigator, failed to speak to prospective witness Lanita Van Dyke, and failed to request timely discovery. He also stresses that the investigation counsel did conduct (visiting the scene and discussing the case with appellant on the day of trial) was inadequate. Even if we assume that counsel's conduct in all these respects was deficient, appellant must demonstrate that if counsel had conducted an adequate investigation, it would have yielded evidence of complainant's bias towards appellant. Appellant then must demonstrate that if trial counsel had presented this evidence in court-along with the other evidence of deficient investigation cited in the text-there is a reasonable probability that the trial court, as finder of fact, would have reached a different outcome. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. We cannot conclude, on this record, that appellant has met the "reasonable probability" test of prejudice based on deficient investigation.

two alleged instances of hearsay during complainant's testimony. At trial, complainant testified that someone with whom he was having a telephone conversation during his encounter with appellant had heard the threats and called the police. He further testified that he had alerted the police to two potential witnesses who were on the sidewalk nearby, but that these individuals had told the police that they did not want to become involved. Even if these statements were inadmissible hearsay and the failure to object reflected constitutional deficiency (issues we do not decide), we cannot find *Strickland* prejudice warranting reversal. The fact that someone other than complainant himself had called the police would have been admissible through complainant's testimony that he had not called the police himself—a non-hearsay statement. Appellant is correct, however, that complainant's testimony that someone on the phone with him had overheard the threats and decided to call the police included inadmissible hearsay that corroborated complainant's story. In effect, the party on the other end of complainant's phone functioned as a second witness for the prosecution. Nonetheless, although such hearsay could have added a measure of prejudice, the motions court implicitly struck the evidence, not relying on the hearsay portion for its truth. Rather, the court used only the non-hearsay portion of the statement to confirm that complainant himself had not informed on appellant—a fact that enhanced complainant's credibility by buttressing the government's argument that complainant lacked bias against appellant.

The other alleged hearsay evidence, complainant's testimony that two men standing nearby declined to speak to the police, added nothing to the government's case. Shifting his ground, however, appellant contends that counsel should have argued that the two were "missing witnesses," implying that, had they been identified by the government, they would have testified favorably to the defense. But that argument also fails, for appellant has proffered nothing to indicate that these witnesses were "peculiarly within the power" of the government to produce or, in any event, that they would have been able to "elucidate the transaction." *Harris v. United States*, 602 A.2d 154, 160–161 (D.C.1992).

*Third*, appellant faults counsel's cross-examination of complainant. Among his examples, he stresses two. In the first place, counsel failed to elicit the true nature of appellant's and complainant's living arrangement, leaving the impression that appellant, who was contributing financially to the household, was actually a "freeloader" whom complainant resented. The motions court found, however, that the living arrangement, even if appellant were a "freeloader," was minimally relevant as "background" showing "how the parties came to be in the location where the argument between the men occurred." Like the motions court, we perceive no trial deficiency here.

■ Appellant also asserts deficiency and prejudice in counsel's failure to challenge complainant's assertion that appellant had been given a thirty-day notice to leave the house, thereby contributing to the impression that appellant had a motive to threaten complainant. The court concluded, however, that counsel's failure to question the thirty-day notice testimony, although relevant to "motivation for threatening to burn the house down," would have added "only slightly to the complainant's testimony that, on the day of the incident, he had told [appellant] that he had to leave the home"—testimony the court credited. The court added that counsel's decision not to cross-examine on

the eviction issue may have reflected sound tactical judgment, because appellant had decided not to testify and had no other means of contradicting complainant if cross-examination failed to undermine his testimony regarding the thirty-day notice.

We cannot gainsay the motions court's conclusions as to the allegedly deficient cross-examination. Even when added to the claimed prejudice from failure to investigate discussed above, the claimed failures in cross-examination do not establish *Strickland* prejudice indicating a probable change of outcome.

■ *Fourth,* appellant contends that counsel did not properly consult with him in making the decision whether to testify— consultation that counsel, in any event, was not prepared to give. Accordingly, says appellant, the fact that the court credited counsel's testimony at the motions hearing that he had urged appellant to testify is meaningless in the context of an ill-prepared lawyer. The motions court correctly noted, however, that this contention "directly contradicted" appellant's answers during the *Boyd* inquiry [6] at trial. But even if the *Boyd* inquiry should not be considered conclusive, and even if counsel had been deficient in preparing appellant to make this important decision, appellant did not argue at the motions hearing, nor does he do so now on appeal, that he should have testified at trial and in fact would have done so but for his trial attorney's inadequate counsel—despite prior convictions that assuredly would have been used to impeach him. If we assume, however, that appellant would have provided at trial the same testimony that he provided at the motion's hearing regarding the circumstances of the charged activity, he has failed to demonstrate how this testimony would have had a reasonable probabili-

ty of altering the outcome of the trial. He does not assert, for example, that his own testimony denying the threats, when added to that of his son, would have been more persuasive than the testimony of his son alone. Nor does he argue that his testimony would have impinged upon the court's credibility assessment of the complainant. Therefore, even assuming counsel's deficiency here, we again cannot find the *Strickland* prejudice required for reversal.

## III.

We are not pleased with the quality of legal counsel provided to appellant in this case. In other, more complex cases the level of preparation evident here might well result in constitutional ineffectiveness. We are particularly appreciative, therefore, of the diligence and high quality of counsel on appeal in presenting appellant's case for reversal under the Constitution. We believe that appellant's best possible case for reversal has been presented to us. When the record is considered as a whole, however, adding in the evidence and other considerations proffered by appellate counsel, we cannot find a reasonable probability that the outcome would have been different had trial counsel performed up to the level appellant now suggests was required. At base, this was a credibility contest between complainant and appellant's young son. The trial court, as factfinder in a bench trial, gave careful consideration to their respective demeanors and testimonies and credited complainant's testimony that appellant had made the threats charged (albeit convicting him only of attempted threat). At the hearing on the motion for new trial, the same judge factored in all the newly proffered evidence and arguments in support of constitutional ineffectiveness and ruled that none

---

6. *Boyd v. United States,* 586 A.2d 670 (D.C. 1991).

of these additions would have affected the verdict at trial. Although we may have found constitutional deficiency in some instances where the motions court found none, that court was clear that as to all evidence and arguments proffered, there was no *Strickland* prejudice. The motions judge concluded:

> The Court agrees with Defendant that competent counsel in any criminal case, should himself, or through an investigator, attempt to interview the complainant, and all other witnesses to an offense, to find out about the facts of the offenses, biases against the defendant by the complainant, and other information that would support a defense. Trial counsel in this case did not undertake those actions, and it was reflected as discussed above. However, under the circumstances of this case, neither counsel's failure to undertake those actions nor other instances of inadequate performance—either standing alone or in conjunction with one another—were so serious that counsel was not functioning as counsel. Further, they did not operate to deprive the defendant of a fair trial, and the Court finds that there is no reasonable probability that the outcome of Defendant's trial would have been different but for the instances of inadequate performance by counsel referenced herein.

In a decision in which this court affirmed the denial of a hearing on a petition under D.C.Code § 23–110 alleging ineffective assistance of trial counsel, we said:

> [T]he trial judge, who has seen the defense attorney in action and watched the evidence unfold, is in a far better situation than an appellate court to determine whether there is any appreciable possibility that a hearing could establish either constitutionally defective representation or prejudice to the defendant in the *Strickland* sense.

*Sykes v. United States,* 585 A.2d 1335, 1340 (D.C.1991). We believe that the same deference applies in a case, such as this one, where a judge in a bench trial who heard and ruled on all the evidence also presides over a collateral attack on the verdict for ineffective assistance of trial counsel and hears all the evidence and arguments proffered at a hearing on the motion for new trial. That said, we have independently reviewed both the trial and post-trial records, as well as the motions court's opinion affirming appellant's conviction against a § 23–110 attack. *Strickland* prejudice is not there.

*Affirmed.*